Robert Mitchell EDWARDS, Appellant,

v.

Warden Sam P. GARRISON, Central Prison, Raleigh, N.C., and State of North Carolina, Appellee.

Donald Bynum BASS, Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 74–1791, 74–2038.

United States Court of Appeals, Fourth Circuit.

Argued June 12, 1975.

Decided Oct. 13, 1975.

Certiorari Denied March 1, 1976. See 96 S.Ct. 1421.

W. Donald Carroll, Jr., Charlotte, N.C. [court-appointed counsel] (Helms, Mulliss & Johnston, Charlotte, N.C., on brief), for appellant in Nos. 74–1791 and 74–2038.

Richard N. League, Asst. Atty. Gen. of N.C. (Rufus L. Edmisten, Atty. Gen. of N.C., on brief), for appellees in No. 74–1791.

Leonard M. Linton, Jr., Asst. U. S. Atty. (Jervis S. Finney, U. S. Atty., on brief), for appellee in No. 74–2038.

Before HAYNSWORTH, Chief Judge, and WINTER and CRAVEN, Circuit Judges.

WINTER, Circuit Judge:

These appeals present common questions of when and under what circumstances prisoners, convicted upon their pleas of guilty, are entitled to an evidentiary hearing on their allegations that their pleas were not voluntary when their allegations to establish involuntariness apparently conflict with their representations made at the time that their pleas were accepted.

Robert Mitchell Edwards, a North Carolina state prisoner, alleged that he was sentenced to a term of thirty years to life in violation of an undisclosed plea bargain that he would receive a maximum sentence of twenty years, although when his plea was taken he denied that any promises had been made to him to induce his guilty plea.

Donald Bynum Bass, a federal prisoner sentenced to a term of six years and the mandatory special parole term of three years for narcotics offenders, 21 U.S.C. § 841, alleged in substance that he plead-

ed guilty as part of a plea bargain that the government would recommend a maximum sentence of three years. Although he conceded that he told the district court at his arraignment that he knew the bargain was not binding on the court and nonetheless he still wished to plead guilty, he now alleges that he made this statement solely because his attorney had advised him to give this answer and that he would not have tendered the plea if he had not been promised that the court would be bound by the recommended sentence or would follow the recommendation.

In each case the district court summarily denied relief. In each, we conclude that the judgment must be vacated and the case remanded for an evidentiary hearing.

We consider the appeals separately.

## I.

### No. 74–1791

A. Edwards was convicted of burglary and felonious escape upon his pleas of guilty. In proceedings in the state courts and in the district court, he alleged that he was being unconstitutionally confined because (1) his sentence of thirty years to life was in violation of N.C.G.S. 14–52 which provides for possible sentences of a term of years *or* life imprisonment; (2) he did not commit burglary because at the time he broke into the house it was twilight and no one was asleep; and (3) his plea of guilty was entered only after he was promised by his attorney that he would receive a maximum sentence of twenty years.

■ We see no merit in Edwards' first two grounds of collateral attack.[1] Since he could have received a sentence of life imprisonment for a conviction of burglary, his receipt of thirty years to life presents no constitutional impropriety despite its possible conflict with an overly technical construction of N.C.G.S. 14–52. Under North Carolina law, we

perceive no requirement that there be an individual asleep in the house which is broken into in order for burglary to be committed. Since there is no constitutional requirement that a state court establish a factual basis for a guilty plea before entering judgment on the plea, *Freeman v. Page*, 443 F.2d 493 (10 Cir. 1971), it was unnecessary to show whether there was or was not someone asleep in the house. Edwards' plea of guilty to the crime with which he is charged is sufficient to sustain conviction of that crime as long as the plea was knowingly and voluntarily made.

When Edwards tendered his plea in the state court, he was required, in accordance with the then state practice, to fill out and execute under oath a questionnaire entitled "Transcript of Plea." Among the questions answered were, "Do you understand that upon your plea of guilty you could be imprisoned for as much as life + 3 years?" which Edwards answered affirmatively, and "Has the Solicitor, or your lawyer, or any policeman, law officer, or anyone else made any promise or threat to you to influence you to plead guilty in this case?" which Edwards answered in the negative. The form which Edwards completed posed no other inquiry which might have revealed any possible plea bargain by and between him or his attorney and the prosecutor.

■ Notwithstanding his affirmative answer to the first question and his negative answer to the last question, Edwards' sworn petition for a writ of habeas corpus alleged that he was induced to plead guilty by a promise, made by his court-appointed counsel in the presence of witnesses, that if he pleaded guilty his sentence would not exceed twenty years. His petition was summarily dismissed by the district court for the reason that it presented "no evidence of plea bargaining and the failure of any promise, requiring the Court to go behind the tran-

---

1. Edwards' court-appointed counsel in this court agrees that these contentions do not provide a sufficient basis for habeas corpus relief. We consider them, nevertheless, since they were raised by Edwards when he was proceeding *pro se*.

script of his plea of guilty. For that reason, his solemn affirmation in open court must stand."

B. Without further evidentiary development, Edwards' allegation of the promise made to him by his court-appointed attorney may be read to constitute an allegation of a plea bargain. Any plea bargain that might have been made was certainly not spread on the record. Although Edwards represented to the trial court that no one, including his lawyer, had made any promises or threats to influence him to plead guilty, he was not asked specifically about any plea bargain. We therefore conclude that under *Crawford v. United States,* 519 F.2d 347 (4 Cir. 1975), and more particularly under *Walters v. Harris,* 460 F.2d 988 (4 Cir. 1972), Edwards has made allegations which entitle him to the opportunity to show involuntariness of his plea, notwithstanding his answers at his arraignment.

▬ In *Crawford,* we held that in collateral proceedings a federal prisoner ordinarily will not be permitted to controvert the statements made by him at the time that he tendered a plea of guilty "unless and until he makes some reasonable allegation why this should not be so." 519 F.2d 350.[2] In our view, the same principle applies to the representations made by an accused to a state court when he tenders a plea of guilty. *Crawford* recognized, however, that an accused might seek to conceal a plea bargain because "[t]he accused may be fearful that full disclosure would jeopardize the bargain," 519 F.2d at 351, noting with approval our decision in *Walters.*

We think that Edwards' case fits into the exception thus recognized.

In *Walters,* the accused, at his arraignment, repeatedly denied that any promises had been made to him to induce him to plead guilty. Nonetheless, after his plea was accepted and he was sentenced to two 20-year concurrent sentences, he sought to vacate his sentence alleging that, through his attorney, he had bargained for a 10-year sentence as a condition of making his plea. We held that if defendant had made an unkept plea bargain his sentence would be stricken. We specifically rejected the notion that Walters' allegation of an unkept plea bargain did not require evidentiary exploration because of his denial at his arraignment that any promise had induced his plea. Recognizing that "[e]xamination of the defendant alone will not always bring out into the open a promise that has induced his guilty plea," because "[i]t is well known that a defendant will sometimes deny the existence of a bargain . . . out of fear that a truthful response would jeopardize the bargain," we held that "[t]he danger that a Rule 11 inquiry will not uncover a plea bargain is sufficient that the defendant's responses alone to a general Rule 11 inquiry cannot be considered conclusive evidence that no bargain has occurred." 460 F.2d at 993.

▬ Although Walters was a federal prisoner prosecuted in a federal court and Edwards is a state prisoner prosecuted in a state court, the same reasoning applies. In either case the unallayed apprehensions of the accused make general inquiries about inducements unreliable in unearthing plea bargains.[3] Not

2. In *Crawford,* we sustained the district court's summary denial of relief. Factually, *Crawford* differs from Edwards' case in two respects. First, the district court to which Crawford tendered his plea raised the question of a plea bargain and, in that context, Crawford denied that any promises had been made to him that he would receive a lighter sentence if he pleaded guilty. In contrast, "plea bargain" was never mentioned to Edwards and he could well have not understood that he was expected to reveal a plea bargain in response to general

inquiry about promises to induce him to plead guilty. Second, even if he so understood, Edwards was not advised or reassured about the effect of disclosure of a plea bargain. Crawford was told that "[i]t's all right" for his attorney and the prosecutor to have negotiated and reached a bargain although the bargain would not be binding on the court.

3. Because of the inherent unreliability of a general inquiry about inducements to plead guilty without specific inquiry as to any plea

having been asked if he claimed that a plea bargain had been made, Edwards' denial, at the time he entered his plea, that any promise had induced him to tender it does not foreclose inquiry into his later allegation suggesting that a plea bargain may have been made. The district court was in error in giving conclusive effect to Edwards' answers as set forth in the Transcript of Plea and summarily denying his application for a writ of habeas corpus. It must conduct an evidentiary hearing into the correctness of Edwards' later allegations and grant or withhold relief according to the facts as they are found.

We fully recognize that our decision here is of limited precedential significance. In oral argument, we were told that North Carolina has amended its trial practice with respect to the taking of pleas of guilty. The current North Carolina prescribed Transcript of Plea (now termed "Transcript of Negotiated Plea") poses questions to the prosecutor, the accused, and his lawyer designed to elicit a full disclosure of any plea negotiations and any bargain that was reached. Commendably, North Carolina has responded to the admonition to district judges contained in *Walters*. It is therefore unlikely that a case like Edwards' will arise in North Carolina in the future.

## II.

### No. 74–2038

A. Bass was convicted upon his plea of guilty of distributing heroin in violation of 21 U.S.C. § 841. He was sentenced under the Federal Youth Corrections Act, pursuant to which he could be confined as long as six years, and the mandatory special parole term of three years was also imposed, 21 U.S.C. § 841(c).

Before the district court accepted Bass' guilty plea, it reminded him that

the Supreme Court had approved of the practice of plea bargaining, that plea bargaining was proper, and that if any bargains had been made, Bass "should have no hesitancy in letting there be known such understandings." In response to this statement, Bass' attorney replied that in return for Bass' guilty plea the government had promised to recommend a 3-year sentence. When asked by the district court if he was aware of any additional agreements, Bass stated: "No. May I ask my lawyer something?" The record reflects that Bass then engaged in an off-the-record discussion with his attorney.

When Bass had finished conferring with his attorney, the district court again asked if there was "anything else," and Bass, apparently now more sure of his answer, said that there was not. The district court next explained to Bass that in determining what sentence to impose it would not be bound by the government's recommendation but could in fact impose whatever sentence it felt to be necessary, up to the statutory maximum. Bass stated that he understood this fact and persisted in his plea. Ultimately, the voluntariness of the plea was apparently established and it was accepted.

In his subsequent motion under 28 U.S.C. § 2255, Bass alleged, *inter alia*, that the district court's imposition of sentence constituted a breach of the plea bargain "entered into with the United States attorney and defense counsel, who assured him before entering his guilty plea that the Court would follow the recommendation of the government." The latent ambiguity of whether the prosecutor *and* defense counsel gave the assurance was removed in one of Bass' later allegations which also spelled out the advice given by his attorney:

> [T]he Court [at the time of arraignment] did not indicate one way or the other whether it would follow the

bargain and assurance that a plea bargain is not improper, even if not binding on the court, a state court's determination that a plea accepted after only general inquiry was freely and voluntarily made without evidentiary ex-

ploration of a subsequent allegation that there was an unfulfilled plea bargain is not binding on a federal court under *Townsend v. Sain*, 372 U.S. 293, 312–13, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

government's recommendation. Which would, at least, have enabled petitioner to determine whether the United States attorney and defense counsel had simply misrepresented the truth in order to induce the plea. This procedure alone placed petitioner on the horns of a dilemma as indicated by his request to consult with defense counsel in an off-the-record discussion . . . *where petitioner was once again assured that the Court's line of questioning was merely courtroom formality and that petitioner was to answer in the negative* [as to questions as to whether any promises, other than the plea bargain, induced him to plead guilty]. (Emphasis added.)

In essence, Bass thus alleges that both the prosecutor and his lawyer assured him that the government's recommendation would be binding on the district court, and his lawyer advised him to suppress his truthful answer that he did not wish to plead guilty if the district court did not treat the government's recommended sentence as binding on it; and for this reason, his plea was not voluntarily and understandingly made.

Bass also alleged other grounds for his motion. He claimed that he had been denied effective assistance of counsel because his lawyer also represented his codefendant and that a possible conflict of interest was present because counsel also negotiated a plea bargain for her and the district court adopted the recommendation that she be placed on probation. Finally, Bass says that his sentence should be vacated because the district court's direction that Bass should be hospitalized for detoxification from the methadone maintenance program to which he had been adhering was not carried out. At the time of sentencing, Bass asserted that he had pleaded guilty in order to obtain medical treatment, al-

though he had made no mention of this consideration when he entered his plea.

B. We see no merit in Bass' contentions that he did not receive effective assistance of counsel and that his sentence should be vacated or modified to provide him hospitalization. We agree, as the district court concluded, that nothing in the court records or files indicates that Bass' lawyer had any greater loyalty to his codefendant than to him. That she received a less severe sentence than Bass proves nothing. It is manifest from the facts that Bass received harsher treatment at the instance of the district court and not because his lawyer was deficient in representing him.

█ The district court did not sentence Bass on condition that he be hospitalized; it simply directed the marshal to turn him over to the hospital authorities. It gave this direction because Bass had presented evidence that he would be received as a patient at a hospital operated by the District of Columbia Narcotics Administration. When the marshal sought to carry out the direction, it turned out that the evidence was not true; the hospital would not admit Bass, at least in the immediate future. Since there was no hospital to receive him, of necessity the district court instructed the marshal to make the same disposition of Bass as any other prisoner.

The main issue is whether Bass, having stated that no promises, aside from the bare plea bargain, were made to induce him to plead guilty, and having stated that he knew that the government's recommendation was not binding and that he still wanted to plead guilty, may now be heard to controvert those statements and to seek to establish that he gave those answers solely on the advice of his lawyer to the end that his plea was not voluntarily and understandingly made and should be stricken.[4]

4. Before us, Bass' appointed counsel urges a broader basis of decision: that a defendant has the right to withdraw a guilty plea, no matter how knowingly and understandingly made, when the sentencing court fails to follow the government's recommendation. We decline to decide this case on that broad ground. While the same issue is pending before us in two other appeals which have been argued and are under consideration, Bass' alle-

The district court ruled that Bass was bound by "his statements that he was aware of the fact that the Government's recommendation was just that and nothing more, and that the Court was free to impose any sentence within the statutory maximum." We disagree.

 It is axiomatic that to be voluntarily and understandingly made a plea of guilty must be solely the product of the accused's informed free will. A guilty plea is not voluntary and must be stricken if that free will is overborne by the prosecutor or by the accused's lawyer. *See Mosher v. Lavallee,* 491 F.2d 1346 (2 Cir. 1974); *Wellnitz v. Page,* 420 F.2d 935, 936 (10 Cir. 1970). If, in fact, other promises were made to Bass and he answered that he wished to plead guilty even if the district court imposed a sentence more severe than that recommended by the government and that answer was not the product of Bass' informed free will, but was given solely because Bass had been induced to give it, Bass' plea should not stand.

*Crawford,* as we have said earlier, holds that ordinarily a federal prisoner will not be permitted to controvert the statements made by him at the time that he tendered a plea of guilty absent some reasonable allegation why this should not be so. In suggesting reasons why in unusual cases a federal prisoner should be permitted to controvert his statements at arraignment, we said "[h]e may have been advised to give answers that the court would require in order to accept the plea, rather than those which reflected the truth." 519 F.2d at 351. Bass has alleged just that. It follows that he must be given the opportunity to prove his allegations in a plenary hearing.

*No. 74–1791—reversed and remanded.*

*No. 74–2038—reversed and remanded.*

gations about the advice given him by his then lawyer present a narrower issue—the one which was considered by the district court. If

Bass' allegations are well-founded, the broader question will never be reached.