Gary Darrell **ALLISON**, Appellant,

v.

Stanley **BLACKLEDGE**, Warden, Central Prison, and State of North Carolina, Appellees.

No. 75–1738.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 2, 1975.

Decided April 13, 1976.

---

C. Frank Goldsmith, Jr., Marion, N. C. [Court-appointed counsel] (Story, Hunter & Goldsmith, Marion, N. C., on brief), for appellant.

Richard N. League, Asst. Atty. Gen. of North Carolina, Raleigh, N. C. (Rufus L. Edmisten, Atty. Gen. of North Carolina, Raleigh, N. C., on brief), for appellees.

Before HAYNSWORTH, Chief Judge, and WINTER and FIELD, Circuit Judges.

WINTER, Circuit Judge:

Gary Darrell Allison, a North Carolina prisoner incarcerated under state law, appeals from the summary denial of his petition for a writ of habeas corpus. He sought issuance of the writ on the ground, *inter alia,* that his plea of guilty to attempted safe robbery was involuntary. Because we are persuaded that Allison sufficiently alleged a claim of involuntariness, we reverse the order denying issuance of the writ and remand the case for further proceedings.

## I.

In Allison's petition for a writ of habeas corpus, he alleged, with regard to the claim that his plea was involuntary, that he was brought to trial on charges of (a) safe robbery, (b) breaking, entering and larceny, and (c) possession of burglary tools. During a recess of the trial, Allison was led to believe by his counsel that counsel

> had talked the case over with the Solicitor and the Judge, and that if the petitioner would plead guilty, that he would only get a 10 year sentence of penal servitude.

He alleged further that his conversation with his lawyer was "witnessed" by another person other than Allison and his lawyer, that he entered a plea of guilty to attempted safe robbery because he believed that he would receive only a ten-year sentence, but that after his plea was accepted he was sentenced to a term of seventeen to twenty-one years. In supplementation of his claim, Allison said that he had been "promised by his Attorney, *who had consulted presumably* with the Judge and Solicitor, that he was only going to get a ten year sentence . . . (emphasis in original)." He conceded that he was questioned by the trial judge prior to sentencing, and, by implication, that in his answers he denied that any promises had been made to him; but since he thought "he was only going to get ten years, and had been instructed to answer the questions so that the Court would ac-

cept the guilty plea," he was not now precluded from attacking its voluntariness.

In answer, the state asserted that the plea was voluntary. It filed the transcript of Allison's plea—a printed form setting forth certain questions with Allison's written answers, signature and verification. The question of whether Allison's lawyer had made any promise or threat to induce the plea was answered negatively; and the question of whether Allison's plea was freely, understandingly and voluntarily made was answered affirmatively.

The district court dismissed Allsion's petition summarily. It was of the view that the transcript of plea showed that the plea was made voluntarily. Referring to the allegation that Allison's lawyer "presumably" talked to the court and the prosecutor, the district court held that predictions of counsel as to the duration of a sentence provided no ground for attacking an otherwise valid plea of guilty.

Allison then filed a petition for rehearing. In essence, he argued that an unkept promise of counsel could render a guilty plea involuntary and that he was entitled to an evidentiary hearing to afford him the opportunity to prove that such a promise had been made to him. The petition for rehearing was referred to a magistrate who entered a memorandum order reciting that the burden was on Allison to prove that he was the victim of an unkept promise and directing Allison to file "an affidavit of his witness, and such other proof of his allegation with respect to the promise he maintains was not kept."

Apparently Allison experienced substantial difficulties in trying to comply with the magistrate's order. They need not be detailed, nor their sufficiency or accuracy examined. The fact is that the affidavit and other proof were not forthcoming, and the district court denied the petition for rehearing and dismissed the action for noncompliance.

## II.

Taken in their entirety, Allison's allegations are that he was induced to plead

guilty by his attorney's promise, which he was led to believe was made after consultation with the prosecutor and the judge, that he would receive a sentence of not more than ten years. That promise, if made, was not kept; and if the promise can be proved, Allison's plea was not voluntary. *Machibroda v. United States,* 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962). Of course, in *Machibroda* the promise was made by the prosecutor, but *Machibroda* has been extended to the representations by an accused's counsel that, by prearrangement with the prosecutor or the court, a plea of guilty will not result in greater than a given punishment when, in fact, a greater punishment is imposed. *United States v. Hawthorne,* 502 F.2d 1183 (3 Cir. 1974); *United States v. Valenciano,* 495 F.2d 585 (3 Cir. 1974); *Roberts v. United States,* 486 F.2d 980 (5 Cir. 1973); *Walters v. Harris,* 460 F.2d 988 (4 Cir. 1972) (by implication), cert. den., 409 U.S. 1129, 93 S.Ct. 947, 35 L.Ed.2d 262 (1973). Such a representation is far different from a mere prediction by counsel as to the length of sentence which is likely to result from a guilty plea.

 Although Allison alleged an unkept promise or representation of his attorney, at the time he pleaded he represented that his attorney had made no promises or inducements to get him to plead and that his plea was voluntary. Ordinarily Allison would be held to his statement at the time he entered his plea unless he advanced a reasonable explanation for his inconsistent allegations. *Crawford v. United States,* 519 F.2d 347 (4 Cir. 1975). Such an explanation is advanced here. Allison alleges that he answered as he did when he entered his plea because he had been instructed so to answer in order for the trial court to accept his guilty plea. Allison is therefore not foreclosed by the statements he made in order to effect acceptance of his plea from subsequently attacking its voluntariness. *Edwards v. Garrison,* 529 F.2d 1374 (4 Cir. 1975).

We hold therefore that the district court erroneously denied Allison's petition for a writ of habeas corpus and reconsideration of its denial without conducting an evidentiary hearing to determine the truth of what Allison alleged—both that a promise inducing the plea was made, and that its existence was concealed to effect acceptance of the plea.

### III.

 We are constrained to add a further word about the procedure followed in the disposition of this case with regard to the magistrate's order that Allison file an affidavit and proof of his allegations before his petition for reconsideration would be decided on its merits, and the district court's denial of the petition for reconsideration and dismissal of the action for failure to comply with the magistrate's order.

Where, as here, an indigent prisoner, proceeding *pro se,* alleges a cause of action which, if proved, would entitle him to post-conviction relief, we think it improper to require him to document that claim or support it by affidavits of his witnesses before affording him the evidentiary hearing to which he is otherwise entitled. *Bryan v. United States,* 492 F.2d 775, 783 (5 Cir.) (dissenting opinion), *cert. denied,* 419 U.S. 1079, 95 S.Ct. 668, 42 L.Ed.2d 674 (1974). Of course we do not hold that the summary judgment procedure of Rule 56, F.R.Civ.P., is inapplicable to applications for writs of habeas corpus by state prisoners. If the state moves for summary judgment in such a case and offers affidavits and other proof that the petitioner's claim is lacking in merit, a *pro se* petitioner may be required, after being advised of his rights and how to proceed, to offer counteraffidavits or other proof to establish that material facts are genuinely disputed before he is afforded an evidentiary hearing. If, in such a situation, the petitioner fails to respond and offers no reasonable explanation why he cannot respond, summary judgment may properly be entered against him. But the point is that a *pro se* petitioner is not to be put to a greater burden to obtain an evidentiary hearing when he has alleged a case which, if proved, would entitle him to relief, than

any other plaintiff in any other type of action.

*REVERSED AND REMANDED.*

ADDENDUM

After circulation of the majority opinion and the special concurrence to the nonsitting members of the court, a motion was made within the court to rehear the case in banc and a poll on the motion was requested. The motion failed for want of a majority of those eligible to vote in the poll.

FIELD, Circuit Judge (concurring specially):

I concede, albeit reluctantly, that recognition of *Edwards v. Garrison,* 529 F.2d 1374 (No. 74–1791, 4 Cir. 1975), as viable precedent supports the reversal in this case. It occurs to me, however, that over the past few years this court has written a "Looking-glass book" [1] in this area.

It began with the decision in *Walters v. Harris,* 460 F.2d 988 (4 Cir. 1972). In that case a federal defendant filed a § 2255 motion alleging that he had entered his guilty plea upon the promise of a government attorney that would receive a sentence which was lighter than that ultimately imposed by the court. Although the record disclosed that the defendant had assured the court that no promise had been made to induce his guilty plea, the panel stated "that the defendant's responses alone to a general Rule 11 inquiry cannot be considered conclusive evidence that no bargaining has occurred," 460 F.2d at 993, and remanded the case to the district court for an evidentiary hearing. Conceding that its conclusion placed us in conflict with at least four other circuits,[2] the panel held that the charge of involuntariness was not refuted by the defendant's denial at arraignment that any promise had induced his plea.

Two years after *Harris* we again had occasion to consider this question in *Crawford v. United States,* 519 F.2d 347 (4 Cir. 1975). In that case we affirm the district court's dismissal of the § 2255 motion, stating:

"Accordingly, we adopt the rule that the accuracy and truth of an accused's statements at a Rule 11 proceeding in which his guilty plea is accepted are 'conclusively' established by that proceeding unless and until he makes some reasonable allegation why this should not be so. Stated otherwise, we hold that a defendant should not be heard to controvert his Rule 11 statements in a subsequent § 2255 motion unless he offers a valid reason why he should be permitted to depart from the apparent truth of his earlier statement." 519 F.2d, at 350.

This encouraging pronouncement in *Crawford* was short-lived for less than three months later we handed down our decision in the consolidated cases of *Edwards v. Garrison* (No. 74–1791) and *Bass v. United States* (74–2038), *pub. sub nom. Edwards v. Garrison,* 529 F.2d 1373.

*Edwards* involved a state prisoner who charged that his guilty plea was induced by a promise made by his counsel with respect to the sentence he would receive despite the fact that he had affirmed to the court that no promises had been made. The panel held that an evidentiary hearing was required on the issue of voluntariness and, referring to the decision in *Walters v. Harris, supra,* stated:

"Although Walters was a federal prisoner prosecuted in a federal court and Edwards is a state prisoner prosecuted in a state court, the same reasoning applies. In either case the unallayed apprehensions of the accused make general inquiries about inducements unreliable in unearthing plea bargains. Not having been asked if he claimed that a plea bargain

1. "Why, it's a Looking-glass book, of course! And, if I hold it up to a glass, the words will all go the right way again."
 The Annotated Alice—Alice in Wonderland and Through the Looking Glass by Lewis Carroll—p. 191, Bramwall House, 1960.

2. *Pursley v. United States,* 391 F.2d 224 (5 Cir. 1968); *Norman v. United States,* 368 F.2d 645 (3 Cir. 1966); *Putnam v. United States,* 337 F.2d 313 (10 Cir. 1964); *United States v. Davis,* 319 F.2d 482 (6 Cir. 1963).

had been made, Edwards' denial, at the time he entered his plea, that any promise had induced him to tender it does not foreclose inquiry into his later allegation suggesting that a plea bargain may have been made." 529 F.2d, at 1377.

The opinion in *Edwards* concluded with the observation that the decision was of limited precedential significance since the court had been advised that the state practice had been amended to pose "questions to the prosecutor, the accused, and his lawyer designed to elicit a full disclosure of any plea negotiations and any bargain that was reached." 529 F.2d at 1378.

Any conclusion that specific inquiry relative to a possible plea bargain might be the touchstone to finality in such a case was quickly dissipated, however, by the panel's disposition of the *Bass* case in the same opinion. In *Bass*, the record disclosed that prior to accepting the guilty plea the district judge had advised the defendant that the Supreme Court had approved the practice of plea bargaining, that a plea bargain was proper and that if any bargains had been made Bass "should have no hesitancy" in revealing such information to the court. In response to the court's inquiry, the attorney for Bass stated that in return for the guilty plea the government had promised to recommend a three year sentence. The district court went on to explain that it would not be bound by the government's recommendation and could in fact impose whatever sentence it felt would be necessary up to the statutory maximum. Bass stated that he understood this fact and persisted in his plea. Despite these representations to the court, in his § 2255 motion Bass alleged that the prosecutor and his lawyer assured him that the government's recommendation would be binding on the court and that his

lawyer advised him to suppress his truthful answer that he did not wish to plead guilty if the district court would not treat the government's recommended sentence as binding on it. The panel held that despite the thorough inquiry of the district court with respect to a possible plea bargain, Bass "may now be heard to controvert those statements and to seek to establish that he gave those answers solely on the advice of his lawyer to the end that his plea was not voluntarily and understandingly made and should be stricken." 529 F.2d, at 1379.

A distillation of these decisions demonstrates to me that no matter how searching the inquiry of the court may be on the issue of voluntariness, no trial judge, state or federal, can protect himself against a later complaint by a convicted criminal that his plea was involuntarily entered by reason of some covert promise or understanding dehors the record. It is disturbing to note that all too often the convicted petitioner in such a case alleges that he was advised by his attorney to give false answers to the questions propounded by the court, and our opinions have unfortunately recognized such a charge as a valid allegation which can only be resolved by an evidentiary hearing.[3] I suggest that the dignity and weight which we accord such irresponsible allegations is utterly unrealistic, for to me it is inconceivable that any attorney in his right mind would jeopardize his professional reputation and his license to practice law by engaging in such conduct.[4]

Additionally, in many cases presently coming before this court from state prisoners, the petitioner has vouched not only orally, but has confirmed in writing under oath that no improper influence or promise has accounted for his plea. Nevertheless,

---

**3.** In distinguishing the *Bass* case from the earlier decision in *Crawford*, the *Edwards* panel stated:

"In suggesting reasons why in unusual cases a federal prisoner should be permitted to controvert his statements at arraignment, we said '[h]e may have been advised to give answers that the court would require in order to accept the plea, rather than those which reflected the truth.' 519 F.2d at 351. Bass

has alleged just that. It follows that he must be given the opportunity to prove his allegations in a plenary hearing." (Emphasis added), 529 F.2d, at 1380.

**4.** It is significant that in a great number of these cases the attorney charged with such conduct was performing a public service to the court by acting as appointed counsel for the defendant.

merely on the prisoner's allegations, we permit the solemn record and act of the trial court to be impugned. Stripped of all euphemism, the plain truth is that these petitioners either lied to the trial judge at the time they entered their guilty pleas, or they are later lying to the federal court in an attempt to overthrow their convictions. I can discern no middle ground, and in effect we reward them for this self-admitted mendacity by ordering an evidentiary hearing.

I do not believe I am alone in the observation that the once Great Writ has been badly abused in the federal courts over the past decade, and I fear that we have unwittingly encouraged such abuse by our decisions in cases such as this.