**Thomas Earl EDMONDS, Appellant,**

v.

**Major D. C. LEWIS, Superintendent of Caledonia Institution, and the State of North Carolina, Appellees.**

**No. 75–2308.**

United States Court of Appeals, Fourth Circuit.

Argued June 10, 1976.

Decided Dec. 3, 1976.

M. Douglas Berry, Greensboro, N.C., for appellant.

Richard N. League, Asst. Atty. Gen. of North Carolina, Raleigh, N.C. (Rufus L. Ed-

misten, Atty. Gen., Raleigh, N.C., on brief), for appellees.

Before BUTZNER and RUSSELL, Circuit Judges, and HOWARD T. MARKEY, Chief Judge, United States Court of Customs and Patent Appeals.*

DONALD RUSSELL, Circuit Judge:

The petitioner, a state prisoner, who plead guilty to secret assault, discharging a firearm into an occupied dwelling, and murder in the second degree, and who received a sentence of 28–30 years imprisonment pursuant to a plea bargain, seeks, by a habeas petition filed in District Court, after exhaustion of state remedies, to invalidate his guilty plea on a number of grounds. The District Court dismissed the petition without a hearing and the petitioner has appealed. We affirm.

█ While the petitioner has asserted several grounds for relief, only one is sufficiently substantial to deserve any discussion. The petitioner alleged that his appointed counsel told him that he had better plead guilty if he wanted counsel to represent him, leaving him with the impression that "if he did not plead guilty that * * [he] would be left alone and without any aid from counsel or anyone." He contends that this allegation, if sustained by proof, is sufficient to invalidate the voluntariness of his plea. Before entering his plea, however, the petitioner was examined by the Presiding Judge, and stated under oath that the charges against him had been explained to him and were understood by him, that he understood he had a right to plead not guilty and to be tried by a jury, that he was "in fact guilty" of the charges, that his lawyer had talked and conferred with him and he was "satisfied with his services," that "the Solicitor, or [his] lawyer, or any policeman, law officer or anyone else" had not made "any promise or threat to * * influence [him] to plead guilty," and finally that he "freely, understandingly and volun-

tarily" entered his plea of guilty. Despite this examination on the record under oath, the petitioner in effect asked the Court to disregard his sworn asseverations at sentencing and to conduct an evidentiary hearing on whether his plea was induced by a threat of his lawyer consisting of the statement already quoted. We do not think the record of this case warrants disregarding the petitioner's positive denial under oath of threats inducing his plea.

The position of the petitioner in this case is not a new one either in this or other courts. Prisoners, dissatisfied with their sentences following the entry of a guilty plea, long overburdened the courts with petitions similar to that filed by the petitioner. Valuable judicial time was thereby consumed in evidentiary hearings on meritless claims that such plea had been induced by threats or a misunderstanding of the charges. In *Boykin*,[1] the Supreme Court sought to provide a means for relieving the courts of the burden of conducting evidentiary hearings on such claims. It counseled state courts to establish a procedure for examination on the record of a defendant before acceptance of a guilty plea to establish the voluntariness of the defendant's plea and its freedom from coercion by threat or promise. The purpose of such examination was, in the language of *Boykin*, to "forestall[s] the spin-off of collateral proceedings," later attacking the voluntariness of the plea, the very thing the petitioner seeks to do here.[2] The State in this case has followed the suggestion in *Boykin* and has adopted a procedure for doing just what the Supreme Court had recommended. Under this procedure, a defendant, before his guilty plea may be accepted, is examined under oath on the voluntariness of his plea, including particularly its freedom from coercion by threat. That procedure was followed here.

█ In keeping with the purposes of the procedure suggested in *Boykin* and as for-

* Sitting by designation.

1. *Boykin v. Alabama* (1969) 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274.

2. 395 U.S. at 244, 89 S.Ct. at 1713.

mulated for federal prisoners in Rule 11, Fed.R.Crim.P., we have adopted the firm rule that "the accuracy and truth" of a prisoner's denial of any threats inducing his plea of guilty, given during an examination on the record at his sentencing, either under Rule 11 or under a similar state procedure such as that involved here, will be considered " 'conclusively' established by that proceeding * * * unless he offers [by the allegations of his petition] a valid reason why he should be permitted to depart from the apparent truth of his earlier statement." *Crawford v. United States* (4th Cir. 1975) 519 F.2d 347, 350, *cert. denied* 423 U.S. 1057, 96 S.Ct. 791, 46 L.Ed.2d 647 (1976).

Recognizing the purpose under *Boykin* of the petitioner's pre-sentence examination on the record under oath and following our rule in *Crawford,* we are convinced that the "reason" alleged by the petitioner for repudiating the truthfulness of his earlier denial of a threat inducing his plea was insufficient to warrant an evidentiary hearing. Petitioner does not allege that his attorney instructed him to answer the trial court's inquiries falsely nor does he claim his attorney made a threat intended to induce him to perjure himself. He made his statement to the Court, denying any threats, voluntarily, without any prompting from anyone. To permit him under those circumstances to disregard his denial of any threats, made under a solemn oath in open court, without any prompting or urging by anyone, "would seriously undermine respect for the oath, and ultimately for the judicial process itself." *Martinez v. United States* (D.N.J. 1976) 411 F.Supp. 1352, 1359–60. In fact, it would make a mockery of the prophylactic procedure suggested by the Supreme Court in *Boykin* were we to permit the petitioner to impeach his own oath on allegations as

wanting in substance as those raised in this petition.

The petitioner, however, contends that *Edwards v. Garrison* (4th Cir. 1975) 529 F.2d 1374, *cert. denied* 424 U.S. 950, 96 S.Ct. 1421, 47 L.Ed.2d 355 (1976) and *Allison v. Blackledge* (4th Cir. 1976) 533 F.2d 894 support the sufficiency of his allegations to require an evidentiary hearing. Both of these cases involved charges of a broken plea bargain, coupled with an averment that the defendant was counseled by his attorney to answer falsely the Court's inquiry, which he was assured was "merely courtroom formality." In *Edwards,* as the Court emphasized, by way of distinguishing *Crawford,* " 'plea bargain' was never mentioned to Edwards and he could well have not understood that he was expected to reveal a plea bargain in response to general inquiry about promises to induce him to plead guilty." [3] In *Bass,* also involved in the *Edwards* decision, the Court, after quoting from *Crawford* [4] to the effect that a prisoner may have a reason to challenge his arraignment answers if he has been "advised [by his counsel] to give answers that the court would require in order to accept the plea, rather than those which reflected the truth," declared as a basis for its decision that "Bass has alleged just that." [5] *Allison* presented the same situation as is evidenced by the final comment of the Court in that decision to the effect that the petitioner alleged "both that a promise inducing the plea was made, and that its existence was concealed to effect acceptance of the plea." [6] Neither of the decisive facts in those cases (*i. e.,* a broken plea bargain and an instruction by counsel to conceal at arraignment the promise) is present here. [7] There was a plea bargain here but it was not broken and there is no allegation that anyone instructed the peti-

---

**3.** 529 F.2d at 1377, n.2.

**4.** 519 F.2d 351.

**5.** 529 F.2d at 1380.

**6.** 533 F.2d at 897.

**7.** *United States v. I. H. Hammerman, II* (4th Cir. 1975) 528 F.2d 326, 331, is another case presenting the unusual combination of an unkept plea bargain and a denial of "any other understandings or commitments by the government," where a guilty plea was found under those two circumstances involuntary.

tioner to testify falsely at his arraignment. *Edwards* and *Allison* are thus not in point.

The judgment of the District Court dismissing the habeas petition herein is affirmed.

BUTZNER, Circuit Judge (dissenting):

In its answer, the state did not deny Edmonds' allegation that his appointed lawyer told him that he had better plead guilty if he wanted counsel to represent him, leaving him with the impression that "if he did not plead guilty . . . [he] would be left alone and without any aid from counsel or anyone." Nevertheless, the district court dismissed Edmonds' petition for a writ of habeas corpus without an evidentiary hearing. We must, therefore, accept Edmonds' allegation as true for the purpose of deciding this appeal. Because the allegation is legally sufficient to raise factual issues about both the voluntariness of Edmonds' guilty plea and the validity of his arraignment, I would vacate the judgment and remand the case for an evidentiary hearing.

The accuracy and truth of a prisoner's disavowal of any threats at his arraignment are " 'conclusively' established by that proceeding unless and until he makes some reasonable allegation why this should not be so." *Crawford v. United States*, 519 F.2d 347, 350 (4th Cir. 1975). It is not enough for the prisoner merely to challenge the voluntariness of his plea. He must also allege sufficient facts to raise an issue about the validity of his arraignment. Edmonds' allegation satisfies these dual requirements.

If Edmonds can prove that his lawyer caused him to believe that he would be denied his sixth amendment right to counsel unless he pled guilty, his plea was involuntary. *Cf. Machibroda v. United States*, 368 U.S. 487, 493, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962). The plea is, therefore, void and open to collateral attack, because his attorney's alleged coercion also raises an issue about the validity of the arraignment for the following reasons.

The decision of how to plead must be made by the defendant himself after con-sultation with his lawyer. *See* ABA *Standards Relating to the Defense Function* § 5.2(a) (1971); ABA *Standards Relating to Pleas of Guilty* § 3.2 (1968). An important reason for this consultation is to protect the accused from making an involuntary or unintelligent plea. *See McMann v. Richardson*, 397 U.S. 759, 770–72, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). Therefore, a lawyer who coerces a guilty plea fails to advise the accused competently about his arraignment. Representation by a competent lawyer is a prerequisite to a valid arraignment. *Cf. McMann v. Richardson, supra*; *Pennsylvania v. Claudy*, 350 U.S. 116, 122–23, 76 S.Ct. 223, 100 L.Ed. 126 (1956). The Court emphasized in *Gideon v. Wainwright*, 372 U.S. 335, 344, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) that the right to counsel was fundamental and essential to a fair trial. If, however, a prisoner's attorney becomes an instrument of coercion, the constitutional protection which *Gideon* sought to assure is destroyed. In sum, when defense counsel coerces the accused to plead guilty, he corrupts both the plea and the arraignment.

A prisoner's answers at arraignment are not always conclusive. Despite his previous disavowal of threats, when he implicates the validity of both his plea and the arraignment, he should be granted a hearing to show, if he can, why he should be rearraigned. *Fontaine v. United States*, 411 U.S. 213, 93 S.Ct. 1461, 36 L.Ed.2d 169 (1973). Though *Fontaine* differs factually, its principles govern Edmonds' case. The alleged coercion by Edmonds' appointed counsel, if proved, will invalidate both his guilty plea and his arraignment. Therefore, notwithstanding his prior inconsistent statements, he is entitled to an evidentiary hearing on the question of his counsel's alleged coercion. The evidentiary hearing should not be confined to whether the lawyer said that he would withdraw from the case. If such a statement were made, the court should examine its context. For example, a lawyer should not countenance a perjured defense. ABA *Canons of Professional Ethics*, Disciplinary Rule 7–102(A)(4). Nor should he continue his representation if

a conflict of interest arises. ABA *Canons of Professional Ethics,* Disciplinary Rule 5–105. The critical question is not whether the lawyer said he would withdraw. It is whether Edmonds reasonably believed from what his lawyer said that he would be denied counsel unless he pled guilty.