Willie X. MASSEY

v.

Joe R. MARTIN, Warden of C. C. I., and the Attorney General of the State of South Carolina.

Civ. A. No. 76–1444.

United States District Court, D. South Carolina, Columbia Division.

Dec. 22, 1976.

Willie X. Massey, pro se.

Daniel R. McLeod, Atty. Gen. for State of S.C., and Emmet H. Clair, Asst. Atty. Gen., Columbia, S.C., for defendants.

## ORDER

HEMPHILL, District Judge.

Petitioner Willie Massey and two of his brothers, Thomas and Billy Massey, went on trial in New York County on July 26, 1973 for the armed robbery and murder of a York liquor store owner earlier that month. After the prosecution had put up ten witnesses, Billy Massey entered pleas of guilty to both crimes during the second day of trial. Billy then testified for the prosecution and directly implicated petitioner and Thomas in the crimes.[1] After the twelfth witness for the State had completed his testimony, petitioner also entered guilty pleas to both charges.[2] The trial of the third brother proceeded to conclusion, and the jury deliberated less than a half-hour before finding him guilty of both charges.[3] The Honorable Robert W. Hayes, Presiding Judge, then directed special verdicts recommending petitioner and Billy Massey to the mercy of the court in accordance with the procedure applicable to murder pleas and convictions at that time.[4] Petitioner was thereafter sentenced to the mandatory period of life imprisonment for murder, and to serve twenty-five years for armed robbery.[5]

Petitioner applied for post-conviction relief on September 20, 1973. He alleged that

he was not advised of his *Miranda* rights,[6] that a statement he gave to officers about the crimes was involuntary, and that his attorney told him he would receive a sentence of ten years.[7] The Honorable George Bell Timmerman, Jr., presiding at that time in the Sixteenth Circuit, denied relief on November 25, 1974. Judge Timmerman in his Order quoted at some lengths from the transcript of petitioner's guilty plea, and cited as controlling *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), and *Wade v. Coiner*, 468 F.2d 1059 (4 Cir. 1972). The petitioner appealed to the South Carolina Supreme Court. A new attorney was appointed to prosecute the appeal, and he filed a brief in line with the dictates of *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). The South Carolina Supreme Court agreed that the exceptions raised were lacking in merit, and dismissed the appeal by its Memorandum Opinion, *Massey v. State et al.*, 231 S.E.2d 206 (1976).

Petitioner now seeks federal relief that would invalidate his guilty plea on four grounds:

(1) He was unaware that a proper defense existed;

---

1. Tr. 150–164. Billy Massey testified that petitioner suggested the robbery and picked out the place to rob. The three brothers drove to the scene and Thomas cased the store. He then waited in his car while petitioner and Billy entered the store to commit the robbery. Petitioner shot the store owner in the chest while he lay over a counter stunned by a blow on the head by the gun wielder. The robbery netted about $400.00 which the three brothers divided among themselves. Petitioner threw the pistol in some woods not far from the death scene.

2. Tr. 172–176. By this time the jury had heard all the details of the robbery and the slaying of the victim, including petitioner's total involvement in the planning and the execution of the crimes.

3. Tr. 241. The State presented only two more witnesses after the petitioner entered his plea, and one earlier witness was recalled.

4. Tr. 245. See *State v. Harper*, 251 S.C. 379, 162 S.E.2d 712 (1968), and *State v. Gibson*, 259

S.C. 459, 192 S.E.2d 720 (1972). *Harper* was decided in the wake of *United States v. Jackson*, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968), and *Gibson* was decided after the United States Supreme Court announced *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 on June 29, 1972. Thus, when petitioner was tried for murder, he faced a mandatory life sentence if convicted, whether after trial or after a plea of guilty.

5. Tr. 251. The sentence of Billy, the youngest brother, was twenty-five years concurrent with the life sentence. Petitioner and Thomas drew consecutive sentences.

6. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

7. Transcript of Record on appeal, pages 12–18.

(2) He was unaware of the penalties he faced;

(3) His trial attorney informed him a guilty plea would result in "a very small sentence;"

(4) His trial attorney told him he could not expect to be acquitted by a jury.

It is at once obvious that grounds numbered (1) and (4) have not been fairly presented to the South Carolina courts as required by 28 U.S.C. § 2254. No mention was made by petitioner in his state post conviction application of any defense to the criminal charges he faced. Neither did the state application refer to the alleged statement by petitioner's trial counsel that "public opinion" militated against an acquittal. Moreover, the grounds as set forth here are frivolous in the face of the trial record, and petitioner's clear exposition during the plea proceeding of his participation in the crimes.[8]

Massey's allegation *under oath* that he was not aware of the maximum sentences for armed robbery and murder before his pleas were entered is a blatant falsehood. He expressly acknowledged that his attorney had told him of the maximum sentences for the offenses, and also informed Judge Hayes that no attorney had told him that he would be rewarded if he entered a guilty plea.[9] An elaborate factual basis was laid by the testimony in the record before Massey signalled his intention to change his plea, and he thereafter corroborated his brother's testimony in all respects, and admitted that he shot and killed the homicide victim. In the face of such evidence, and his later admission of the killing during an armed robbery, his contentions here have a hollow ring indeed. Despite this contradiction, the Court has considered very carefully Massey's claim that his trial attorney told him he would receive a lighter sentence if he pleaded guilty than would be forthcoming if he persisted with the trial.

The respondents have filed an affidavit of attorney Samuel B. Fewell, Jr., in which the petitioner's defense counsel avers that he never at any time advised Massey that he would receive less than the mandatory life sentence for murder, and that he forecast a twenty-five year sentence for armed robbery "in all probability." Massey was thereafter specifically advised that he had a right to submit countervailing affidavits. He failed to do so. Instead, he filed a supplemental reply in which he alleged, with emphasis, that "witnesses" could attest that Mr. Fewell "did make promise" that a guilty plea would result in a lesser sentence than a conviction entered on a jury verdict. Massey added that affidavits could be submitted "if so requested."

Under instructions of the Court, the United States Magistrate at Columbia wrote Massey on October 19, 1976, and informed him again of the provisions of Rule 56, Federal Rules of Civil Procedure, and of the necessity for compliance with the requirements of the rule in the submission of counteraffidavits. A copy of Rule 56 was sent to Massey, and because he had suggested that he might have difficulty in obtaining the affidavits, the time for him to comply was enlarged to November 8, 1976. Massey thereafter submitted his own affidavit, in which he avers that attorney Fe-

---

**8.** Petitioner acknowledged that he knew the sentences he faced, and stated that he had no witnesses to call to testify. (Tr. 172–75). Thus if he had a "proper defense," he failed to reveal it to his attorney or to the trial judge.

**9.** Tr. 173, ff. 9, 12 and 20. In his reply, Massey argues that the court should have explained the death penalty. He also states that his attorney had earlier told him that conviction by a jury would result in the imposition of the death penalty. The first premise is frivolous, for the death penalty was inapplicable at the time of Massey's plea; see note 4, *supra*. The death penalty was re-enacted in South Carolina by an overridden veto on July 2, 1974, and now appears as § 16–52 in the South Carolina Code of Laws. Certain provisions thereof have again been excised as unconstitutional by the South Carolina Supreme Court. See *State v. Rumsey*, S.C., 226 S.E.2d 894 (1976). The second premise, implying that Massey might have feared a death sentence, is not adequately cast. Cf. *Parker v. North Carolina*, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 and *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

well told him on July 27, 1973 that the State had no "concrete evidence," but that he would receive life and twenty-five years if found guilty, but that "[h]e said that he would not let the Judge give me over 25 years, if I pleaded guilty." Massey goes on to aver that Mr. Fewell prompted him as to how he should answer questions put to him by Judge Hayes when he offered the guilty plea.[10]

In addition to his own affidavit, Massey also submitted an affidavit by his brother, Billy Massey. The brother's affidavit has nothing to do with petitioner's allegations; it concerns an alleged promise by another attorney concerning the sentence he (Billy) might receive. As a consequence, Billy Massey's affidavit has no relevance.[11]

The contradictory, uncorroborated averments of the petitioner do not place his claim in the same category as the prisoner-appellant in *Allison v. Blackledge*, 533 F.2d 894 (4 Cir. 1976), *certiorari granted*, —— U.S. ——, 97 S.Ct. 55, 50 L.Ed.2d 74, 1976, or in the status of the successful petitioner in *Edwards v. Garrison*, 529 F.2d 1374 (4 Cir. 1975), *certiorari denied*, 424 U.S. 950, 96 S.Ct. 1421, 47 L.Ed.2d 355, 1976. In *Edwards*, there was an allegation in the petitioner's pleading which the Court of Appeals construed as an allegation of a broken, undisclosed plea bargain, taking the case outside the rationale of *Crawford v. United States*, 519 F.2d 347 (4 Cir. 1975), and *Walters v. Harris*, 460 F.2d 988 (4 Cir. 1972). In *Allison*, the petitioner alleged that he had been led to believe that his attorney had cleared a ten year sentence with the trial judge and the prosecuting attorney, another inference of a plea bargain. The *Allison* ruling was that on the record presented, the petitioner was not foreclosed by his answers at the plea proceeding under the rule of *Crawford* because

the petitioner alleged he, too, was rehearsed as to his answers to the judge's questions so as to assure the acceptability of the guilty plea.

The only similarity between Massey's claim and the claims of the petitioners in the *Edwards* and *Allison* cases is Massey's allegation that his attorney told him how to respond to Judge Hayes' questions. This single element is not of sufficient import to fit his case into the holdings of those cases. His credibility is fatally tainted by the inconsistencies in his sworn pleadings, and the bald, unsupported allegations of an inconsistent affiant who ignores repeated opportunities to obtain corroborating affidavits do not justify an evidentiary hearing. The pleadings and affidavits before the court are devoid of any language from which a rational inference of an undisclosed plea bargain can be derived, and the petitioner's argumentative references to the death penalty suggest that he is grasping at straws in an effort to obtain a new trial.

In view of the deficiencies observed, and because *Allison* is inapposite on the facts, the petition is hereby dismissed.

After the preparation of this order the court received the Fourth Circuit Court of Appeals' slip sheet in *Edmonds v. Lewis*, 546 F.2d 566 (1976) in which the majority opinion distinguishes *Allison*. It appears that *Edmonds* warrants the opinion expressed here.

Perhaps the appellate courts, far removed from the realities of trial court proceedings, do not realize that each time an appellate opinion bends the law to accommodate a criminal that such excites a mad rush to the writ room at the various institutions, to prepare petitions conforming to the latest loophole. Confined criminals have time to spare and the preparation of a petition is

10. In his state application for post-conviction relief, the petitioner alleged that his counsel told him he would receive ten years as earlier noted. The application is reproduced in the Transcript of Record of the appeal of the denial of post-conviction relief by Judge Timmerman, pages 12–18. The reference to the promise of ten years appears in Item 10(c), page 14.

11. Billy Massey's guilty plea is at Tr. 145, et seq. He, too, informed Judge Hayes that he knew the maximum sentences applicable, and had been offered no inducement for his guilty pleas.

diversion. A district court, already overloaded by legislation creating new jurisdictional fields with no floor,[12] are flooded with petitions. In those cases where a summary dismissal is warranted, the judge *must read*[13] the record. Perhaps when one gets to appellate level he or she can no longer believe a murderer, thief, robber, or rapist will lie, cheat, steal, or *do anything* to gain freedom. To many prisoners, the trip to and from a hearing is a holiday at the expense of correctional authorities and the courts. Gratitude for a free lawyer's able services is not a usual reaction among the criminal element. This court is aware of the sentiments of many able lawyers who do not want criminal assignments for fear of appellate criticism, which, if not so poetic or brilliant is like the "Rubaiyat":

"The Moving finger writes;
and, having writ, Moves on:
Nor all thy Piety nor Wit
Shall lure it back to cancel half a Line
Nor all thy tears wash out a Word of it.

*Allison*, unless corrected, will spawn a thousand petitions across the land. And perhaps no one above the district court level will have the faintest idea as to this new reason for increased caseloads in the trial courts.

AND IT IS SO ORDERED.

---

12. Diversity jurisdiction (28 U.S.C. § 1332) has a floor of $10,000—Odometer jurisdiction (15 U.S.C.A. §§ 1981–1991, Truth in Lending (15 U.S.C.A. § 1601, *et seq.*) and other consumer legislation have no floor and the claims could be as little as one dollar, especially in odometer cases where the judge must raise any award of less than fifteen hundred dollars to that figure.

13. At District Court level the judges read the record.