**GILMORE v. UNITED STATES.**

No. 2389.

Circuit Court of Appeals, Tenth Circuit.

Jan. 2, 1942.

Robert D. Ellis, of Denver, Colo., for appellant.

Cleon A. Summers, U. S. Atty., of Muskogee, Okl., for appellee.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

BRATTON, Circuit Judge.

In October, 1935, two indictments were returned in the United States Court for Eastern Oklahoma. One, containing two counts, was against Dewey Gilmore, Russell Land Cooper, Leo O'Malley, alias Irish, Leonard Short, and Jack Miller, alias J. J. Miller. The first count charged that on or about December 22, 1934, the defendants did, by force and violence and by putting in fear certain named officers and employees of the Okemah National Bank, of Okemah, Oklahoma, take from such persons and in their presence $13,186 in money belonging to the bank; and the second count charged that the defendants did, by putting in jeopardy the lives of such officers and employees, take the money from the bank. The second indictment was against Dan T. Heady, Virgil Melton, alias Red, Fred Reese, and Jack Miller, alias J. J. Miller. It also contained two counts and was substantially identical in substance with the first indictment except that it charged the taking on the same day of $5,491.25 from the First National Bank of Okemah. The two cases were tried separately in November, 1935. In one Gilmore and Cooper were found guilty on both counts of the indictment, and Short was found guilty on the first and not guilty on the second; and in the other Heady was found guilty on both counts. Both cases were continued to December 9 for sentence, and on that day Gilmore and Cooper were each sentenced to imprisonment for twenty years on the first count and for twenty-five years on the second, with provision that the sentences should run concurrently.

In January, 1936, the indictment in this cause was returned in the same court against Gilmore and Cooper. It charged in substantially identical language the substance of each and both of the earlier indictments. And, it further charged that the former indictments were returned and the cases tried; that Gilmore, Cooper, Short, and Heady were found guilty as indicated; that on motion of the defendants and by agreement the cases were continued until December 9, 1935, for sentence; that on December 3, while confined in the city jail at Muskogee, Oklahoma, under an order of commitment by the court, awaiting sentence, and while in the custody of the United States Marshal and the chief of police of Muskogee who was in charge of such jail, Gilmore and Cooper, in freeing and attempting to free themselves and Short and Heady from such custody and confinement for the offense of robbery of a national bank, shot and fatally wounded Ben Bolton, chief of detectives of Muskogee, who was assisting the chief of police in detaining and safekeeping such prisoners. Each defendant was found guilty and was sentenced to a term of ninety-nine years in the penitentiary, with provision that the sentence should run concurrently with that imposed in the former case. Gilmore filed a motion to vacate the judgment and sentence; the motion was denied; and the appeal is from the order of denial.

The Government advances the preliminary contention that the trial court was without jurisdiction to consider the

motion for the reason that it was filed after the expiration of the term at which the judgment was entered, and that therefore the appeal should be dismissed. It is a familiar general rule that in the absence of a statute providing otherwise, a court cannot alter or set aside its final judgment after the expiration of the term at which it was entered, unless the proceeding for that purpose was appropriately initiated during that term. United States v. Mayer, 235 U.S. 55, 35 S.Ct. 16, 59 L.Ed. 129. But in the recent case of Holiday v. Johnston, 313 U.S. 342, 61 S.Ct. 1015, 85 L.Ed. 1392, it was sought to present in a proceeding in habeas corpus the contention that two sentences had been erroneously imposed for a single offense. It is fairly apparent that there the term at which the sentences were imposed had long since adjourned. Yet it was held that the remedy was to apply for the vacation of the sentence and a resentence in conformity to the statute under which the accused was convicted. That case is controlling here.

 It is further contended that the appeal should be dismissed because it was not taken within the time prescribed by Rule III, Rules of Practice and Procedure in Criminal Cases, 18 U.S.C.A. following section 688, 292 U.S. 661, 54 S.Ct. xxxvii. The order denying the motion was entered on August 4, 1941, and the notice of appeal was filed fifteen days later. Section 1 of the Act of March 8, 1934, 48 Stat. 399, 18 U.S.C.A. § 688, empowers the Supreme Court to prescribe rules of practice and procedure with respect to proceedings in criminal cases after verdict; section 2 provides that the right of appeal shall continue in those cases in which appeals were then authorized by law, but that rules may be prescribed governing the time and manner of taking such appeals; and Rule III, supra, provides that an appeal shall be taken within five days after entry of judgment of conviction, except that where a motion for new trial has been made, the appeal may be taken within five days after the denial of such motion, and that the appeal shall be taken by filing with the clerk of the trial court a notice to that effect. That rule applies to the taking of an appeal from a judgment of conviction. This is an appeal from an order denying a motion to vacate the judgment of conviction. The rule has no application here. Meyers v. United States, 5 Cir., 116 F.2d 601.

 Coming to the merits, it is contended that after appellant had been indicted, tried and found guilty in the former case of the crime of robbery of a national bank, he could not be prosecuted in this case under a separate indictment charging the killing of the officer in attempting to free himself and his associates from confinement; and that the trial, conviction and sentence in this case constitute double punishment for a single offense. The Fifth Amendment to the Constitution of the United States guarantees against double jeopardy for a single offense. But that guaranty is no impediment to the power of Congress to make separately punishable each step leading to the consummation of a transaction which lies within the reach of Congress to prohibit. Albrecht v. United States, 273 U.S. 1, 47 S.Ct. 250, 71 L.Ed. 505; Reger v. Hudspeth, 10 Cir., 103 F.2d 825, certiorari denied 308 U.S. 549, 60 S.Ct. 79, 84 L.Ed. 462. Two or more offenses may be separate and distinct in law despite the fact that they grow out of the same transaction, if each embraces one or more elements different from the others. Slade v. United States, 10 Cir., 85 F.2d 786. And the test to be applied in determining the question of identity of offenses charged in two or more counts of a single indictment or in separate indictments is whether each necessitates proof of a fact not required of the others. Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306; Mills v. Aderhold, 10 Cir., 110 F.2d 765; Hunt v. Hudspeth, 10 Cir., 111 F.2d 42; Carpenter v. Hudspeth, 10 Cir., 112 F.2d 126, certiorari denied 311 U.S. 682, 61 S.Ct. 62, 85 L.Ed. 440; Caballero v. Hudspeth, 10 Cir., 114 F.2d 545.

 The Act of May 18, 1934, 48 Stat. 783, as amended, 50 Stat. 749, 54 Stat. 695, 12 U.S.C.A. § 588a et seq., deals with the subject of robbery of a bank. Section 2 includes robbery accompanied by force and violence, robbery accompanied by putting in fear, robbery accompanied by assault, and robbery accompanied by putting life in jeopardy. Reliance is placed upon Durrett v. United States, 5 Cir., 107 F.2d 438, and Hewitt v. United States, 8 Cir., 110 F.2d 1, certiorari denied 310 U.S. 641, 60 S.Ct. 1089, 84 L.Ed. 1409, as holding that the statute merely creates different classes of one offense—robbery of a bank. But in the later case of Wells v. United States, 5 Cir., 124 F.2d 334, it was expressly held

that the section creates four separate and distinct offenses. Whether it creates separate and distinct offenses or different classes of a single offense, it is addressed solely and exclusively to the offense of robbery of a bank and does not include murder as an element or incident of such offense. Proof of murder would not be necessary to conviction on an indictment drawn under either provision in the section.

■ But section 3, 12 U.S.C.A. § 588c, provides that whoever, in committing any offense defined in the act, or in avoiding or attempting to avoid apprehension for the commission of such offense, or in freeing or attempting to free himself from arrest or confinement for such offense, kills a person shall be punished as therein provided. It thus is manifest that the indictment in this case charged an element and necessitated proof of a fact not charged or necessary to be proved in the former case. That fact was the killing of a person while attempting to effect freedom from confinement for robbery of the bank. Measured by the test previously adverted to, the indictment in this case charged a separate and distinct offense from that laid in the earlier indictment. Cf. Casebeer v. United States, 10 Cir., 87 F.2d 668.

■ It is urged however that in order to constitute an offense under section 3, the killing must accompany and be an incident of the robbery, not follow separately and distinctly in point of time. The statute provides in clear language that where a person kills another either in committing the offense of robbery of a bank, as defined in the act, or in avoiding or attempting to avoid apprehension for the commission of such offense, or in freeing or attempting to free himself from arrest or confinement for such offense, he shall be punished as therein specified. It is to be remembered that these several provisions are in the disjunctive, thus indicating a legislative purpose to make each a separate and distinct offense. Arrest sometimes occurs at the time and place of the commission of an offense. But ordinarily confinement follows separately and distinctly in point of time and place; and in the very nature of things, escape or attempted escape from confinement is generally quite apart in respect of time and place from the commission of the offense for which the person is confined. It therefore is clear that Congress did not intend to restrict the section to instances where murder is committed at the very time of the robbery itself. And it cannot be said that murder committed in attempting to escape from confinement for the offense of robbing a national bank is so unrelated to the offense of the robbery as to fall beyond the legislative reach of Congress to make penal.

Affirmed.