**Stanley Eugene CRAWFORD, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 74–1008.

United States Court of Appeals, Fourth Circuit.

Argued March 6, 1975.

Decided July 15, 1975.

Thomas B. Anderson, Jr. [court-appointed] Durham, N. C. (Loflin, Anderson & Loflin, Durham, N. C., on brief) for appellant.

N. Carlton Tilley, Jr., U. S. Atty. (V. Edward Jennings, Jr., Asst. U. S. Atty., on brief) for appellee.

Before WINTER, CRAVEN and RUSSELL, Circuit Judges.

WINTER, Circuit Judge: .

Stanley Eugene Crawford appeals from the summary denial of his motion under 28 U.S.C. § 2255. He sought to strike out his convictions upon his pleas of guilty to two charges of violating subsections (d) and (e) of 18 U.S.C. § 2113

(armed bank robbery and kidnapping in perpetration of bank robbery) on the grounds that (a) his pleas of guilty were not knowingly and understandingly made, and (b) he had been improperly sentenced upon both counts of the indictment because § 2113 states a single offense, with various degrees of aggravation, permitting a sentence of increasing severity, but not multiple sentences.[1]

We conclude that the district court was correct in its summary denial of Crawford's motion to strike his sentence and that Crawford was not entitled to an evidentiary hearing. We also conclude that Crawford's sentence for violating 18 U.S.C. § 2113(d) should not be stricken. In our view, he committed two separate crimes, each of which warranted separate punishment. His conviction for commission of the less aggravated crime did not merge into his conviction for commission of the more aggravated one. We therefore affirm.

### I.

Crawford's attacks on the voluntariness of his plea were set forth in his answer to the question posed in the district court's prescribed form for a motion under 28 U.S.C. § 2255. The question required a concise statement of "every ground" on which it was claimed that the sentence should be vacated and set aside. Crawford responded (sic):

Court appointed attorney lied to me, He told me to plead guilty and I would receeve a total of 20 to 30 yrs with an 4208.A2 number.

My attorney was totaly incompetent, He did not talk to me over 30 minutes Total before trial

He said if I were guilty or not guilty, I would still be found guilty & he scared me into pleading guilty with lies & threats.

I was deprived my right to a fair trial because of the incompentent of my attorny plus his lies in the plea bargaining. *Santabello* vs. *United States*

I was under medication, after recieving a severe beating, from the police & was still suffering mentally the day we went to trial.

Under these condition, petitioner was denied his right to a fair trial.

■■■ Of course, if true, these allegations, or some of them, would entitle Crawford to relief, but, by the statute itself, the district court was authorized to deny the motion if "the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. *See Machibroda v.*

---

1. Crawford makes some other claims with reference to the validity of his pleas, but they are of little moment and without merit. He asserts, for instance, that his counsel was "incompetent" and talked with him for no more than thirty minutes. The official record shows, however, that Crawford's counsel moved for and was given access to the government's file, which he received. The evidence of Crawford's guilt was conclusive. He and his confederate were caught "red-handed." There was no dispute over guilt. Crawford freely conceded his guilt. He could ill have denied it when caught in the car in which he and his confederate had abducted the hostages taken at the bank robbery. The only course open to his counsel was a plea for mercy. In support of this, Crawford's counsel secured and produced a large number of character witnesses and members of Crawford's family. He could only have done this after consulting with Crawford and members of his family. He did all that could reasonably be expected of him under the circumstances where Crawford's guilt was unassailable. The official record refutes conclusively any claim of ineffective assistance of counsel.

At his sentencing, Crawford denied he was under the influence of any drugs. In his petition, he states merely that he was "under medication." He does not claim such medication interfered in any way with his mental faculties. And so far as personal injuries sustained at the time of the robbery are concerned, Crawford and his counsel both affirmed such injuries were physical and not mental, and Crawford advised the court he was "making no contention" of mental incapacity to present his "side of the case." Any suggestion in Crawford's brief that his plea was connected in any way with mental incapacity, whether induced by "medication" or produced by physical injuries, was too devoid of substance to justify an evidentiary hearing.

United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962). There can be no question but that Crawford's arraignment and the proceedings under Rule 11, F.R.Crim.P., are part of the "records" of the case. McCarthy v. United States, 394 U.S. 459, 467, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969), teaches that one of the reasons for requiring a district court to comply strictly with Rule 11 is to facilitate the "determination in any subsequent post-conviction proceeding based upon a claim that the plea was involuntary." [2] Accordingly, we adopt the rule that the accuracy and truth of an accused's statements at a Rule 11 proceeding in which his guilty plea is accepted are "conclusively" established by that proceeding unless and until he makes some reasonable allegation why this should not be so. Stated otherwise, we hold that a defendant should not be heard to controvert his Rule 11 statements in a subsequent § 2255 motion unless he offers a valid reason why he should be permitted to depart from the apparent truth of his earlier statement.

 Thus, the district court was not required to conduct an evidentiary exploration of the truth of an allegation in a § 2255 motion which amounted to no more than a bare contradiction of statements made by Crawford when he pleaded guilty. Of course the allegations in a given case may go beyond the subjects covered in the Rule 11 inquiry; and if the accused has waived counsel at the taking of his plea, his Rule 11 statements may be less conclusive than if he had been represented. See Fontaine v. United States, 411 U.S. 213, 93 S.Ct. 1461, 36 L.Ed.2d 169 (1973). In either event, an evidentiary hearing is required. But here, Crawford was represented by counsel and his allegations do not extend beyond the matters about which he was interrogated at his arraignment.

 As we have noted, the files and records of the case belie Crawford's claim of incompetence of his court-ap-pointed attorney, and his allegations about "medication" and a "severe beating" are too general to warrant hearing. Moreover, with respect to "medication," Crawford was asked at his arraignment if he was under the influence of any "drug or beverage" and he replied in the negative.

The files and records of the case also refute Crawford's present allegations that his attorney "lied" to him about the sentence he would receive, that the attorney "scared me into pleading guilty with lies and threats," and that the attorney lied about "plea bargaining." Taken collectively, these allegations may be read to say either that there was a plea bargain (the substance of which and whether fully performed being unalleged) to induce a plea of guilty, or, if no plea bargain, that there were improper representations, or threats, or both, by court-appointed counsel to induce a guilty plea.

At the Rule 11 proceedings, the district judge explained to Crawford the maximum penalty which could be imposed on him if his guilty plea were accepted. Having received that advice and having acknowledged that he understood it, the following questioning was conducted:

> THE COURT: Has any officer or agent of any branch of Government, either federal, state or local, *or any other person,* made any threat, promise or suggestion of any kind to you, or with your knowledge to anyone else, to induce you to enter a plea of "guilty"? (Emphasis added.)
>
> DEFENDANT CRAWFORD: No.
>
> THE COURT: It is possible that your attorney has talked with the United States Attorney or some member of his staff about a recommendation in connection with the case. It's all right for them to talk in that respect and to agree, but it would be improper for me to enter into the agreement not having heard the case,

---

2. *See also* Fontaine v. United States, 411 U.S. 213, 93 S.Ct. 1461, 36 L.Ed.2d 169 (1973); Raines v. United States, 423 F.2d 526 (4 Cir. 1970).

and I have not. We call it plea bargaining. Do you understand that if they have made some commitment as between themselves that the Court is not bound by any commitment that they made one with the other?

DEFENDANT CRAWFORD: Right.

THE COURT: Are you entering your plea of guilty because you are in fact guilty of the crime or crimes charged?

DEFENDANT CRAWFORD: Yes.

\* \* \* \* \* \*

THE COURT: Has *anyone* promised you that you would receive a lighter sentence, or probation, or any other form of leniency if you would plead "guilty"?

DEFENDANT CRAWFORD: No.

It is unnecessary to consider whether there could or could not have been a plea bargain (even though Crawford's counsel denied it), or to speculate as to what advice Crawford's counsel gave Crawford and whether it was proper. The fact is that Crawford said that he understood that a plea bargain was not binding on the court and twice he said that no one (which, of course, includes his lawyer) made any threats, promises or suggestion of any kind to him or to anyone else, or any promises of leniency to induce a plea of guilty. We hold Crawford to his answers given to the court in response to its questions.

Of course the accused may not always answer the court's interrogation in a Rule 11 proceeding with complete candor. The accused may be fearful that full disclosure would jeopardize the bargain, Walters v. Harris, 460 F.2d 988, 993 (4 Cir. 1972). He may be overwhelmed by his desire to have his plea accepted. He may have been advised to give answers that the court would require in order to accept the plea, rather than those which reflected the truth. But there is no need for us to question the accuracy of the Rule 11 answers in any case, unless and until an accused alleges reasons why we should do so. There is

no need to question the accuracy of Crawford's Rule 11 answers in this case; if there is a valid reason to do so, Crawford may assert it in another motion under § 2255. Overall, we conclude that Crawford's allegations, when considered in the light of, and compared with, the court's records and files, were insufficient to warrant an evidentiary hearing.

II.

There is conflict among the circuits as to whether the offense of bank robbery as defined in 18 U.S.C. § 2113(d) merges into the offense of bank robbery as defined in 18 U.S.C. § 2113(e), when both are committed as part of a single transaction. Briefly stated, § 2113(d) outlaws bank robbery of any degree by one who "assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device," and prescribes a maximum penalty of $10,000 fine and imprisonment of twenty-five years. Section 2113(e) outlaws bank robbery of any degree by one who "in committing . . . [the] offense . . . or in avoiding or attempting to avoid apprehension for the commission of such offense, or in freeing himself or attempting to free himself from arrest or confinement for such offense, kills any person, or forces any person to accompany him without the consent of such person," and prescribes a minimum penalty of ten years and a maximum penalty of life imprisonment. We have not heretofore decided the question of whether these offenses merge, although broad language in Walters v. Harris, supra, where we held that offenses under §§ 2213(a) and 2213(d) merged, is relied on to indicate that merger between §§ 2113(d) and 2113(e) also occurs.

Sullivan v. United States, 485 F.2d 1352 (5 Cir. 1973), is a good example of a case in which the merger doctrine was applied to offenses under §§ 2113(d) and 2113(e). We, however, find United States v. Parker, 283 F.2d 862 (7 Cir. 1960), cert. denied, 366 U.S. 937, 81 S.Ct. 1663, 6 L.Ed.2d 848 (1961),

and Clark v. United States, 281 F.2d 230 (10 Cir. 1960), more persuasive. *See also* United States v. Faleafine, 492 F.2d 18, 24–25 (9 Cir. 1974). These cases establish that, when the kidnapping or murder occurs as part of the commission of the crime of bank robbery, the offenses of lesser forms of bank robbery, including bank robbery with a dangerous weapon, merge into the former. But when the kidnapping or murder occurs either in avoiding apprehension for the commission of bank robbery, or in escape from arrest or confinement for the commission of bank robbery, the murder or kidnapping are separate offenses from the crime of bank robbery and do not merge into it. This is the rule we adopt; and when we apply it to the facts of the instant case, we are led to the conclusion that Crawford was guilty of two crimes—bank robbery with a deadly weapon, and kidnapping to avoid apprehension for bank robbery—and upon his pleas of guilty was properly separately sentenced on each.

Crawford and a co-defendant robbed the Wachovia Bank and Trust Company in Greensboro, North Carolina, of over $76,000 on November 14, 1972. In committing the robbery, Crawford used a knife to threaten bank employees, while his co-defendant used a pistol. A silent alarm alerted authorities before the two could make their getaway. After unsuccessful negotiations with the police, the two took five bank employees and a bank customer as hostages—the same persons who had been intimidated and whose lives had been threatened by use of deadly weapons. Crawford and the co-defendant demanded that a plane be made available to them, and with their hostages they fled in a bank employee's car to the High Point-Greensboro Airport. At the airport, the police said that a plane would not be supplied, so Crawford and the co-defendant turned and headed to the Winston-Salem Airport at speeds of 80 to 90 miles an hour. Determined to stop the bandits, the police set up a roadblock on Interstate 85. When Crawford and his co-defendant attempted to turn the car to avoid the roadblock, they were run off the road by the police, who apprehended them both.

Thus, we think that Crawford had committed armed bank robbery before the hostages were taken. Thereafter he committed the separate crime of kidnapping to avoid apprehension for bank robbery. Upon his pleas of guilty, he was properly sentenced for each.

*Affirmed.*