UNITED STATES of America, Appellant,

v.

Francis Spencer ROSSI et al.,
Defendants, Appellees.

No. 76–1463.

United States Court of Appeals,
First Circuit.

Argued Dec. 8, 1976.

Decided March 31, 1977.

Robert B. Collings, Asst. U. S. Atty., Deputy Chief, Crim. Div., Boston, Mass., with whom James N. Gabriel, U. S. Atty., was on brief, for appellant.

Before COFFIN, Chief Judge, ALDRICH and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

Defendant was indicted, with a codefendant, for bank robbery in three counts: count one charged simple entry and robbery in violation of 18 U.S.C. § 2113(a); count two charged robbery accompanied by assault with a deadly weapon in violation of § 2113(d); count three charged that "in attempting to avoid apprehension for the commission of said offense, [defendants] did force other persons to accompany him [sic] without the consent of such persons", in violation of § 2113(e).[1] A jury found the defendant guilty on all three counts, but the district court, relying on our decision in *O'Clair v. United States*, 470 F.2d 1199 (1st Cir. 1972), imposed a judgment of conviction and sentence only on count three, dismissing counts one and two.

The government appeals the dismissal of count two.[2] It acknowledges that the dismissal of count one was proper, since it is well settled that the Bank Robbery Act proscribes separate convictions for violations of §§ 2113(a) and (d). *O'Clair v. United States, supra*, 470 F.2d at 1204. The

---

1. The government's summary of the evidence relevant to this count is as follows:

"The evidence at the Rossi and Trainor trial showed that a so-called 'security pack' exploded in the getaway car about ¼ to ½ mile from the victim bank, causing the robbers to abandon the car, loot, masks and guns. They then forced their way into an apartment and held four girls hostage for anywhere from one to four hours when they fled under the cover of darkness. The girls had no connection with the victim bank whatsoever and according to the evidence didn't even know where it was."

2. The appeal is under the authority of 18 U.S.C. § 3731. *See In re United States*, 540 F.2d 21, 22–23 (1st Cir. 1976).

government argues, however, that unlike subsection (d),[3] which merely defines aggravating circumstances in connection with the single crime of bank robbery, subsection (e),[4] at least in parts, creates a separate offense upon which a separate conviction and sentence may be entered.

The district court realized that our decision in *O'Clair* did not expressly deal with subsection (e), and conceded that the conjunction of charges in this case "might admit of a different result", but viewed our proscription of multiple convictions under § 2113 as "categorical". We view this as a difficult and close question but conclude, although for different reasons than those advanced in *O'Clair*, that § 2113 creates only a single offense, with punishment to vary as defined in its subsections, including (e).

Every circuit that has considered the question has concluded, as we did in *O'Clair*, that a conviction under subsection (a) merges into a conviction under subsection (d). *See United States v. Faleafine*, 492 F.2d 18, 24 & n. 5 (9th Cir. 1974) and cases cited therein. Nevertheless, there has been no such unanimity with respect to subsection (e). The Seventh and Ninth Circuits have held that the robbery offense merges with kidnaping that occurs in committing or attempting to commit the robbery under the first clause of subsection (e). *United States v. Drake*, 250 F.2d 216 (7th Cir. 1957); *United States v. Faleafine, supra*, 492 F.2d at 25. The Seventh and Tenth Circuits have held that there is no merger when a kidnaping or murder occurs during an escape or attempted escape "from arrest or confine-

ment for such offense", under the third clause. *United States v. Parker*, 283 F.2d 862 (7th Cir. 1960); *Gilmore v. United States*, 124 F.2d 537 (10th Cir. 1942). In situations like the one presented in this case, i. e., a kidnaping in an attempt to "avoid apprehension for the commission" of a bank robbery as defined in clause two, the circuits have split. The Fifth, Sixth and Eighth Circuits have held that there is merger, *Sullivan v. United States*, 485 F.2d 1352 (5th Cir. 1973); *Simunov v. United States*, 162 F.2d 314 (6th Cir. 1947);[5] *United States v. Pietras*, 501 F.2d 182 (8th Cir. 1974); but the Fourth and Tenth hold that a kidnaping that occurs after the robbery has been completed, in an effort to avoid apprehension, is an offense separate from the robbery upon which separate convictions and sentences may be based. *Crawford v. United States*, 519 F.2d 347 (4th Cir. 1975); *Clark v. United States*, 184 F.2d 952 (10th Cir. 1950); *Clark v. United States*, 281 F.2d 230 (10th Cir. 1960) (reconsidering earlier decision in light of *Prince v. United States*, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957) and *Heflin v. United States*, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959)). *See also United States v. Drake, supra*, 250 F.2d at 218 (Schnackenberg, J., concurring).

We agree with this latter group of courts that the considerations that dictate merger of subsection (a) and (d) offenses do not compel the same result here. In *O'Clair* we concluded from the little legislative history available to us "that Congress intended to create one offense—bank robbery—which was to receive one punishment, its severity determined by the nature of the accompa-

---

**3.** 18 U.S.C. § 2113(d) provides:

   "Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both."

**4.** 18 U.S.C. § 2113(e) provides:

   "Whoever, in committing any offense defined in this section, or in avoiding or attempting to avoid apprehension for the commission of such offense, or in freeing himself

or attempting to free himself from arrest or confinement for such offense, kills any person, or forces any person to accompany him without the consent of such person, shall be imprisoned not less than ten years, or punished by death if the verdict of the jury shall so direct."

**5.** *But see United States v. Etheridge*, 424 F.2d 951, 953, 963 (6th Cir. 1970), holding that murder of a co-conspirator to prevent him from testifying was murder to avoid apprehension under clause two of § 2113(e), and affirming separate convictions and sentences without discussing the merger question.

nying aggravating circumstances." 470 F.2d at 1202. The relevant legislative history, the Attorney General's 1934 statement to the House Committee, made this reference to what is now subsection (e): "A maximum penalty is imposed on anyone who commits a homicide or kidnaping *in the course of such unlawful act* [the bank robbery or attempted robbery]." H.Rep. No. 1461, 73d Cong., 2d Sess. (1934). [Emphasis supplied.] Thus the basis for reasoning that subsection (e), like (d), simply imposes a greater penalty on the generic crime of bank robbery could arguably be limited to the first clause of (e) ("in committing any offense defined in this section"). In contrast, the other two situations described in (e) ("avoiding . . . apprehension for the commission of such offense" and "freeing himself . . . from arrest or confinement for such offense") explicitly presuppose the prior existence of an offense. By the same reasoning, we see in this case none of the double jeopardy implications that influenced us in *O'Clair*, since these two provisions are triggered only by acts separate from the bank robbery itself.

Thus the government argues that while cases covered by the first clause of (e) result in merger under the reasoning of *O'Clair* and similar cases, a different result is proper in the case before us. We agree that defendant's forced entry into an apartment, where he held the four occupants hostage from one to four hours, was an act of violence entirely separate from the bank robbery. To impose separate convictions and sentences for this incident is not to pyramid penalties or "[turn] a single transaction into multiple offenses." *Bell v. United States*, 349 U.S. 81, 84, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955). In sum, we think it would have been eminently reasonable for Congress to create separate offenses, and prescribe separate penalties, for crimes as serious as murder and kidnaping which may be far removed in time and space from the antecedent bank robbery.

This is not, however, the end of the inquiry, for our task is not to establish what Congress might reasonably have done, but to interpret what it in fact did in this particular statute. Despite the reasonableness of the result the government urges in this case, we are disturbed by the complexity which this interpretation brings to a superficially straightforward statute. In trying to fathom the proper interpretation, we consider the general structure of the statute, the words themselves and the problems of draftsmanship they confronted, our gleanings from legislative history, and, not least, the sensibleness of the possible contrasting interpretations. Finally, recognizing the closeness of the issue, we deem this a proper case for the application again to this statute, *cf. Prince v. United States, supra*, of the rule of lenity.

At the outset, we have a statute which, in subsections (a), (b), (d), and (e),[6] relates to various means and activities which can characterize, accompany or are associated with bank robberies. Subsections (a), (b), and (d) describe various crimes, the lesser being merged into the greater, as the authorities indicate. The first clause of (e)— "in committing any offense . . . kills . . . or forces any person to accompany him"—is subject to the same merger rationale. It would be odd if the first clause of the subsection were subject to merger while the remaining two clauses, not separately numbered, were to be treated differently as separate crimes. Were this the intent, the legislative drafting is a model of obscurity.

The clauses can of course be read either way—as additional grounds of aggravated bank robbery, or as separate crimes, if one concentrates on the reference to "such offense" as the predicate for the attempt to avoid apprehension and the attempt to es-

**6.** Subsection (c) deals with receiving and other dealings with property stolen from a bank, subjecting the receiver to the same punishment provided by (b) for the taker. It describes a crime quite separate from that of bank robbery, and is intended to "reach a new group of wrongdoers, not to multiply the offense of the bank robbers themselves." *Heflin v. United States, supra*, 358 U.S. at 420, 79 S.Ct. at 454.

cape. But this argument from words is weakened when we consider how the draftsmen might better have written the subsection to indicate that it referred only to gradations of bank robbery. Perhaps they could have written: "in avoiding . . . apprehension for the acts constituting such offenses . . . or in freeing himself . . . from arrest . . for such acts". Not only would such a formulation be more cumbersome but one would still be able to argue that since the avoidance of apprehension or escape followed acts which constituted a crime, the subsections must describe another crime. Perhaps (e) could have included a specific statement that "Such killing or forcing to accompany shall, under the circumstances herein described, be considered an aggravated form of the crime of bank robbery." But the absence of such a clarifying sentence has not prevented the merger of (a), (d), and the first clause of (e).

Not finding the phrasing compelling, we look at the brief legislative history, consisting of short House and Senate reports, H.Rep. No. 1461, *supra*; Senate Rep. No. 537, 73d Cong., 2d Sess. (1934). Sparse though this history is, its thrust is toward a single crime, not a multiple crime, concept. The Attorney General's statement in the later House report described interstate organized crime as the target of the legislation. As a specific example, the statement cited the ability of gangsters "to flee beyond the borders of the State before adequate forces can be organized to . . . capture these bandits." It is in this context that the Attorney General stated, "A maximum penalty is imposed on anyone who commits a homicide or kidnaping in the course of such unlawful act." It is clear that this statement did not envisage homicide or kidnaping by one who had fled beyond the borders of the state as a separate crime.

Another aid to the interpretation of this statute is a scrutiny of the problems of application, the anomalies, and the license for arbitrariness if this facially straightforward statute were to be construed as providing in major part for gradations of one crime and in minor part for separate crimes. If a bank robber takes a hostage before or during a robbery, both to compel compliance by bank personnel with his demands and to ensure his escape, does he fall within the "in committing" clause or the "avoiding apprehension" clause or both? If only within the former, why should he face a single conviction while the robber seizing a hostage as he leaves the bank faces a double conviction? If he is subject to double conviction, almost any robber who uses a hostage during a robbery could be found to have used him during some part of his effort to avoid apprehension. If a robber were to force a hostage to accompany him during the robbery, and during his flight, and then, once arrested, managed to use the hostage again to gain his freedom, he could be subjected to triple convictions.

A distinction that turns on the completion of any offense described in the statute creates similar problems in the case of attempts to rob. If a robber takes a hostage during his attempt and is foiled, when can it be said that the attempt has ceased and the effort to avoid apprehension commences? Under 18 U.S.C. § 2113(a) to enter a bank with an intent to rob is an offense. If a putative robber once crosses the bank's threshold and takes a hostage, could not a prosecutor, if he were so minded, forego indictment for aggravated robbery under the first clause of (e) and instead submit two indictments to a grand jury, one for the crime of entry and one for the crime of taking a hostage to help avoid apprehension?

Once the robber leaves the bank, are acts of homicide or kidnaping while the police are in hot pursuit part of the "same transaction"? We do not find the "single transaction" test, *cf. Crawford v. United States, supra*, 519 F.2d at 352, particularly helpful. As we have pointed out in *Pacheco v. INS*, 546 F.2d 448 (1st Cir. 1976), courts have given singular flexibility to this concept. We point to these anomalies not because the task of drawing difficult distinctions is foreign to the courts, but because an inter-

pretation of the statute that compels recourse to such ad hoc determinations is not to be favored.

We think it reasonable instead to assume that the alternative formulations were included in (e) to avoid interpretive problems like those we have raised, by making clear, in the words of the House Report, that any "murder or kidnaping . . . committed in connection" with a robbery or attempted robbery would be reached by the enhanced penalty provision. But if the statute does not unambiguously reflect this intent, we think the "rule of lenity" tilts the balance as it has before. *See Prince v. United States, supra*, 352 U.S. at 329, 77 S.Ct. 403; *O'Clair, supra*, 470 F.2d at 1201.

We do not believe that this interpretation does any violence to "common sense [or] evident statutory purpose". *United States v. Moore*, 423 U.S. 122, 145, 96 S.Ct. 335, 347, 46 L.Ed.2d 333 (1975). Subsection (e) provides for a minimum sentence of ten years in prison, or death if the jury so directs. The sentencing judge would have discretion to consider all aspects of the crime in setting a single prison sentence, and it does not seem that the collateral consequences of separate convictions and penalties would significantly enhance the deterrent or punitive effect of such a sentence. Moreover, the murder or kidnaping could still be charged as a separate offense under state law. Given the specific and limited purpose of § 2113, *see O'Clair, supra*, 470 F.2d at 1202, and the intent that it complement and assist state law enforcement efforts, H.Rep. No. 1461, *supra*, at 2; Senate Rep. No. 537, *supra*, we see no compelling reason to interpret this statute as creating a separate offense under parts of subsection (e).[7] *Cf. United States v. Bass,*

404 U.S. 336, 349–50, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971).

*Affirmed.*

---

7. We have been dealing with the problem of merger and intend no implications as to the substantive scope of subsection (e). Nothing we say is inconsistent with *United States v. Parker, supra*, 283 F.2d at 863–64 or *Gilmore v. United States, supra*, 124 F.2d at 540, which have applied (e) to crimes in connection with escape subsequent to indictment or conviction for bank robbery. The later event is not insulated against prosecution and conviction, any more than is a prosecution for manslaughter when a victim dies after an offender is convicted for assault and battery. *Diaz v. United States*, 223 U.S. 442, 448–49, 32 S.Ct. 250, 56 L.Ed. 500 (1912). But under our view, at least when the escape occurs before indictment and conviction for bank robbery, the lesser offense merges into the conviction for the greater. *Cf. Kuklis v. Commonwealth*, 361 Mass. 302, 307 n. 3, 280 N.E.2d 155 (1972); *Commonwealth v. Vanetzian*, 350 Mass. 491, 493–94, 215 N.E.2d 658 (1966).