UNITED STATES of America,
Plaintiff-Appellee,

v.

Jerry MILLER, Defendant-Appellant.

No. 85–5899.

United States Court of Appeals,
Sixth Circuit.

Argued May 5, 1986.

Decided June 19, 1986.

Wilbur M. Zevely (argued), Florence, Ky. (Court Appointed), for defendant-appellant.

James Zerhusen, Asst. U.S. Atty., Covington, Ky., Louis DeFalaise (argued), for plaintiff-appellee.

Before ENGEL, CONTIE and RYAN, Circuit Judges.

CONTIE, Circuit Judge.

Jerry Miller appeals from his conviction pursuant to 18 U.S.C. § 2113(e) for attempting to free himself from confinement for armed bank robbery by forcing a person to accompany him without consent. Miller contends that the evidence of force was insufficient to sustain his conviction and that his conviction pursuant to 18 U.S.C. § 2113(e) was barred by his prior conviction under subsections (a), (d) of that section. We affirm.

### I.

On June 12, 1985, Jerry Miller was indicted for attempting to escape federal custody in violation of 18 U.S.C. § 751(a), Count I, and for forcing a person to accompany him without consent in such escape in violation of 18 U.S.C. § 2113(e), Count III. Miller's compatriot in the escape, Perry Melton, was indicted on identical charges in Counts II and IV of the indictment. On July 29, Miller moved to dismiss Count III of the indictment. The motion to dismiss asserted that 18 U.S.C. § 2113(e) should be limited to escapes which are in furtherance of or in connection with the robbery of which the defendant was convicted. "The statute was not designed to include an attempted escape long after conviction." Miller also moved to require the United States to elect between Counts I and III of the indictment on the ground that Count I (escape) is a lesser included offense of Count III (use of force to require accompaniment during escape), and that prosecution for both offenses violated the Double Jeopardy Clause of the Fifth Amendment.

On August 23, 1985, a hearing was held before a magistrate regarding Miller's motion to dismiss, and, on September 23, the magistrate recommended denial of the motion. Regarding Miller's motion to dismiss Count III, the magistrate found:

> The statutory language, however, has no ambiguities and in defining the particular acts punishable in § 2113(e), it is significant that the disjunctive "or" is used. It is reasonable to assume from reading this statute that Congress intended to punish the act of forcing another to accompany a defendant in an attempted escape, whether the defendant's confinement is pre-conviction or post-conviction.

The magistrate also concluded that prosecution for both offenses did not violate the Fifth Amendment. On October 1, 1985, the district court denied Miller's motions.

The evidence in this case, tried to a jury, indicates that Miller had been convicted on May 10, 1985 for robbing a bank insured by the FDIC and putting in jeopardy the lives of bank employees by use of a dangerous weapon in violation of 18 U.S.C. § 2113(a), (d), and was sentenced to 25 years imprisonment. Miller was held in the Boone County Jail from November 13, 1984 to May 15, 1985. Such custody was arranged

through agreements between the county and the U.S. Marshals Service.

Charles Baughman testified that he worked the night shift, midnight to 8 a.m., on May 13, 1985 at the Boone County Jail. On that morning, Miller was in the maximum security area. When locking down the cells, Baughman found that there was water on the floor inside the maximum security cell area in which Miller and Melton were sitting. Miller and Melton asked for a mop to clean up the water. Baughman went back to the control room and told Bonnie Moore, the matron, that "I'm going to take a mop back to D cell. They've got a mess back there." Further, "[t]here's something wrong. I've got a funny feeling there's something wrong," Baughman said. "Watch me real close." Baughman testified that the area had "an unusual quietness to it." Moore was able to watch Baughman from the control room because the hallways are monitored by cameras. The outer door outside the maximum security cell area was open, but the inner door opening into the dayroom was still locked. When Baughman opened the door to push the mop in, Miller told Melton to "[g]et that mop." Melton hopped behind Baughman, jabbed something in his back, and said, "[t]his is a gun. Don't do something stupid, or, you won't get hurt." Baughman did not see anything in Melton's hand and moved around before being warned by Miller, "[j]ust do what you're told. You won't get hurt." Miller and Melton stooped down behind Baughman, and the three proceeded through the hallways, opening doors as they went. Baughman testified that both Miller and Melton told him that he would not get hurt if he did not do anything stupid. When the three reached a door near the control room that Baughman was unable to unlock, Miller and Melton told Baughman to "[t]ell them to unlock the door, or we're going to kill you." Bonnie Moore and Don Altenhofen were in the control room, which was locked with the lights turned out to prevent Miller and Melton from seeing in. Baughman testified that he accompanied Melton and Miller because he felt threatened. Miller and Melton screamed into the control room that they would kill Baughman if the door was not opened. Miller had a weighted sock which he slammed against the control room door. When the door never opened and Miller and Melton heard the elevator bringing down help, they ran back to their cells and Baughman locked the doors behind them. Baughman indicated that Melton was directing the escape, but that Miller had tapped Baughman on the shoulder and told him to do what he was told and he would not get hurt. Baughman emphasized that Miller said "[t]ell them to open the door, or we're going to kill you." Miller had asked for the mop.

Bonnie Moore confirmed that Baughman told her that it was too quiet and that he was suspicious. Moore indicated that she heard, over the monitor, someone say, "don't try anything stupid," and saw Miller following behind Baughman in a stooped posture. When they reached the control room, Miller pressed his face up against the glass, Moore called for help, and Miller was banging a weighted sock against the glass. Moore heard Melton and Miller saying "Open the door," and "Kill him." Moore heard Melton tell Baughman that he would kill him if he did not open the door, but did not hear Miller make such a statement.

Don Altenhofen testified that he heard someone ask him to open the door or else Baughman would be killed, but he was uncertain who made the threat. Altenhofen testified that he believed that Miller had his left hand on Baughman outside the control room door.

Jack Pundle of the Boone County Police Department testified that he participated in a search of Miller and Melton and their cells and no firearm was found. Several rolled-up papers were found and it was theorized that these were jammed in Baughman's back.

On October 1, 1985, the jury convicted Miller on both counts, and, on October 4, 1985, the court merged the counts for the purposes of sentencing and imposed upon

Miller one sentence of fifteen years imprisonment, to be served, however, consecutive to any sentence he was then serving. Defendant's motions for a judgment of acquittal at the close of the evidence had been denied.

## II.

■ Fed.R.Crim.P. 29(a) provides in pertinent part for entry of judgment of acquittal "if the evidence is insufficient to sustain a conviction of such offense." "In deciding whether evidence is sufficient to withstand a motion for an acquittal, we must view the evidence and all reasonable inferences in the light most favorable to the government.... If the evidence is such that a reasonable mind might fairly find guilt beyond a reasonable doubt, the denial of defendant's motion for acquittal must be affirmed." *United States v. Holloway*, 731 F.2d 378, 381 (6th Cir.), *cert. denied,* — U.S. ——, 105 S.Ct. 440, 83 L.Ed.2d 366 (1984); *United States v. Elkins*, 732 F.2d 1280, 1287 (6th Cir.1984).

18 U.S.C. § 2113(e) provides:

Whoever, in committing any offense defined in this section, or in avoiding or attempting to avoid apprehension for the commission of such offense, or in freeing himself or attempting to free himself from arrest or confinement for such offense, kills any person, or *forces* any person to accompany him without the consent of such person, shall be imprisoned not less than ten years, or punished by death if the verdict of the jury shall so direct.

(emphasis added). Case law defining the term "force" within the context of subsection (e) is indeed sparse. The government cites *United States v. Rizzo*, 416 F.2d 734 (7th Cir.1969), in which the court, in an analogous factual situation, held the evidence sufficient where "[t]he turnkey, Price, testified during the Government's case in chief that he thought that defendant had a real gun and as a result was in fear of his life and obeyed the defendant's order to accompany the latter in his attempted escape." *Id.* at 736. Evidence of

physical mistreatment or psychological coercion has been found sufficient, *Coon v. United States*, 360 F.2d 550, 553 (8th Cir.), *cert. denied,* 385 U.S. 873, 87 S.Ct. 145, 17 L.Ed.2d 100 (1966), as has evidence of participation in a scheme involving the use of force, even where the defendant himself did not specifically apply the force, *United States v. Bux*, 261 F.2d 807, 808 (3d Cir. 1958).

Several factors support denial of the motion for acquittal. First, it is clear that Miller was an integral part of the scheme to escape. Second, Miller's intention to use force in some respect is evidenced by his possession of the weighted sock. Third, the evidence establishes unequivocally that Miller threatened Baughman, warning him that he would get hurt if he did anything stupid. This evidence is sufficient to allow a jury to infer that Baughman accompanied Melton and Miller without consent and by the use of force. Accordingly the district court did not err in denying the motion for acquittal.

## III.

■ Miller contends that indictment under 18 U.S.C. § 2113(e) was improper because Congress did not intend for kidnapping during an escape while confined on a robbery charge to be a separate offense from those on which Miller had already been convicted pursuant to 18 U.S.C. § 2113(a), (d).

Initially, of course, we review the language of the statute itself. Subsection (a) generally prohibits bank robbery "by force and violence, or by intimidation" and entry of a bank with the intent to commit a felony. Subsection (b) prohibits theft of property or money in the possession of the bank. Subsection (c) prohibits the receipt, possession, and concealment of stolen property or money. Subsection (d) prohibits assault and use of a dangerous weapon during any of the crimes set out in subsections (a) through (c). Subsection (e) provides punishment for any person who "kills any person, or forces any person to accompany him without the consent of such per-

son" in three specific situations. Murder or kidnapping is proscribed "[1] in committing any offense defined in this section, or [2] in avoiding or attempting to avoid apprehension for the commission of such offense, or [3] in freeing himself or attempting to free himself from arrest or confinement for such offense." Miller, of course, was convicted under clause three.

Miller cites two U.S. Supreme Court cases and three circuit court cases in support of the argument that the government was prevented from punishing him pursuant to subsection (e) because of his prior conviction under subsections (a), (d). In *Prince v. United States*, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957), the defendant was charged with robbery and with entry of a bank with intent to commit a felony, both offenses under subsection (a). The Court discussed the issue in terms of merger, and described the Federal Bank Robbery Act as "a unique statute of limited purpose and an inconclusive legislative history." *Id.* at 325, 77 S.Ct. at 405. The Court found that "[i]t was manifestly the purpose of Congress to establish lesser offenses. But in doing so there was no indication that Congress intended also to pyramid the penalties." *Id.* at 327, 77 S.Ct. at 406. The Court held that the intent to steal, key to the crime of entry with intent to steal, "merges into the completed crime if the robbery is consummated." *Id.* at 328, 77 S.Ct. at 407.

In *Heflin v. United States*, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959), the defendant was charged with violations of subsections (c) (receipt of stolen money) and (d) (assault or use of a dangerous weapon) and conspiracy. The Court observed that "we resolve an ambiguity in favor of lenity when required to determine the intent of Congress in punishing multiple aspects of *the same criminal act*." *Id.* at 419, 79 S.Ct. at 453. (emphasis added). The Court held that Congress did not intend to allow multiple sentencing under subsections (c) and (d).

[I]t seems clear that subsection (c) was not designed to increase the punishment for him who robs a bank but only to provide punishment for those who receive the loot from the robber. We find no purpose of Congress to pyramid penalties for lesser offenses following the robbery. It may be true that in logic those who divide up the loot following a robbery receive from robbers and thus multiply the offense. But in view of the legislative history of subsection (c) we think Congress was trying to reach a new group of wrongdoers, not to multiply the offense of the bank robbers themselves.

*Id.* at 419–20, 79 S.Ct. at 453–54. The Court also construed the statute in *United States v. Gaddis*, 424 U.S. 544, 96 S.Ct. 1023, 47 L.Ed.2d 222 (1976) in which the defendant was indicted under subsections (a), (c), and (d). The Court, applying *Heflin*, held that the defendant could not be convicted separately under subsection (c) of receiving the stolen proceeds.

In *United States v. Faleafine*, 492 F.2d 18 (9th Cir.1974), the Ninth Circuit held that conviction under both subsection (d) and the first clause of subsection (e)—commission of kidnapping or murder during the course of an offense defined in section 2113—was prohibited based on *Prince* and Congressional intent. In the other two cases cited by Miller, both Fifth Circuit cases, the courts held that a robbery conviction under subsection (a) or (d) was not a separate offense from an offense prohibited by the second clause of subsection (e), kidnapping or murder in the course of avoiding apprehension. *Sullivan v. United States*, 485 F.2d 1352 (5th Cir.1973); *Forrester v. United States*, 456 F.2d 905 (5th Cir.), *cert. denied*, 409 U.S. 856, 93 S.Ct. 136, 34 L.Ed.2d 101 (1972). *See also United States v. Atkins*, 558 F.2d 133, 137 (3d Cir.1977), *cert. denied*, 434 U.S. 929, 972, 98 S.Ct. 416, 524, 54 L.Ed.2d 289, 462 (1977), 434 U.S. 1071, 98 S.Ct. 1254, 55 L.Ed.2d 774 (1978) (no separate offense under clauses one or two); *United States v. Rossi*, 552 F.2d 381, 383 (1st Cir.1977) (no separate offense under clause two); *United States v. Pietras*, 501 F.2d 182, 187–88

(8th Cir.), *cert. denied*, 419 U.S. 1071, 95 S.Ct. 660, 42 L.Ed.2d 668 (1974) (same); *United States v. Delay*, 500 F.2d 1360, 1367 (8th Cir.1974) (same); *Jones v. United States*, 396 F.2d 66, 69 (8th Cir.1968), *cert. denied*, 393 U.S. 1057, 89 S.Ct. 695, 21 L.Ed.2d 697 (1969) (no separate offense under clause one).

Two circuits, apart from the inferences we can draw from *Rossi*, [1] have held that subsection (e), clause three, creates a separate offense for which a defendant can be cumulatively sentenced. In *Gilmore v. United States*, 124 F.2d 537 (10th Cir.), *cert. denied*, 316 U.S. 661, 62 S.Ct. 941, 86 L.Ed. 1738 (1942), the court held that conviction of a defendant for an offense proscribed by one of the subsections of 2113 does not bar a subsequent prosecution for murder during escape. Citing the language of the precursor of subsection (e), the court held:

> It is to be remembered that these several provisions are in the disjunctive, thus indicating a legislative purpose to make each a separate and distinct offense. Arrest sometimes occurs at the time and place of the commission of an offense.

But ordinarily confinement follows separately and distinctly in point of time and place; and *in the very nature of things, escape or attempted escape from confinement is generally quite apart in respect of time and place from the commission of the offense for which the person is confined.* It therefore is clear that Congress did not intend to restrict the section to instances where murder is committed at the very time of the robbery itself.

*Id.* at 540 (emphasis added). The Seventh Circuit followed *Gilmore* in *United States v. Parker*, 283 F.2d 862 (7th Cir.1960), *cert. denied*, 366 U.S. 937, 81 S.Ct. 1663, 6 L.Ed.2d 848 (1961), finding that murder or kidnapping under the second or third clauses of subsection (e) "is not a part or aggravation of the bank robbery, but is a separate offense." *Id.* at 864. *See United States v. Fleming*, 594 F.2d 598, 609 (7th Cir.), *cert. denied*, 442 U.S. 931, 99 S.Ct. 2863, 61 L.Ed.2d 299 (1979).[2]

While we have never addressed the propriety of punishment under the third clause of subsection (e) in the escape context when the defendant has been previously

---

**1.** In *Rossi*, the court held:
> The first clause of (e)—"in committing any offense ... kills ... or forces any person to accompany him"—is subject to the same merger rationale. It would be odd if the first clause of the subsection were subject to merger while the remaining two clauses, not separately numbered, were to be treated differently as separate crimes. Were this the intent, the legislative drafting is a model of obscurity.
552 F.2d at 383. However, the court limited its holding. "[W]hen the escape occurs *before indictment and conviction for bank robbery,* the lesser offense merges into the conviction for the greater." *Id.* at 385 n. 7 (emphasis added). The basis for this distinction between pre-conviction and post-conviction escapes is unclear. However, upholding the conviction in Miller's case where the escape was post-conviction is not inconsistent with *Rossi*.

**2.** The Fourth Circuit had followed *Parker*. In *Crawford v. United States*, 519 U.S. 347, 352 (4th Cir.1975), *cert. denied*, 423 U.S. 1057, 96 S.Ct. 791, 46 L.Ed.2d 647 (1976), the court held:
> [W]hen the kidnapping or murder occurs as part of the commission of the crime of bank robbery, the offenses of lesser forms of bank

robbery, including bank robbery with a dangerous weapon, merge into the former. But when the kidnapping or murder occurs either in avoiding apprehension for the commission of bank robbery, or in escape from arrest or confinement for the commission of bank robbery, the murder or kidnapping are separate offenses from the crime of bank robbery and do not merge into it.

An *en banc* panel of that circuit overruled *Crawford* in *United States v. Whitley*, 759 F.2d 327 (4th Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 196, 88 L.Ed.2d 164 (1985) holding that "[i]nterpreting § 2113(a), (b), (d), and (e) as creating greater and lesser included offenses is consistent with the general principles relating to lesser included offenses." *Id.* at 331. "We are persuaded, therefore, that § 2113(d) creates a lesser included offense of the crime defined in § 2113(e). These subsections do not simply provide enhanced punishment for a single offense of bank robbery." *Id.* *Whitley* is distinguishable from the instant case in that *Whitley* did not involve a prosecution under the third clause of subsection (e), nor did *Whitley* involve, as does this case, prosecutions based on separate factual transactions.

convicted under subsections (a) or (d),[3] we have held that the "clear import of the Supreme Court's holding in *Prince* was that a person should not be punished twice for a *single unlawful transaction.*" *Bryan v. United States*, 721 F.2d 572, 574 (6th Cir.1983), *cert. denied*, 465 U.S. 1038, 104 S.Ct. 1315, 79 L.Ed.2d 711 (1984) (emphasis added). This is consistent with the rule of statutory construction that " 'doubt will be resolved against turning a single transaction into multiple offenses.' " *Simpson v. United States*, 435 U.S. 6, 15, 98 S.Ct. 909, 914, 55 L.Ed.2d 70 (1978), *quoting Bell v. United States*, 349 U.S. 81, 84, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955); *Grimes v. United States*, 607 F.2d 6, 13 n. 6 (2d Cir.1979). *See also United States v. Lawson*, 683 F.2d 688, 690 (2d Cir.1982) ("multiple convictions ... may not be based on an identical set of facts"); *United States v. Stroman*, 667 F.2d 416, 417 (2d Cir.1981) ("single criminal act"); *United States v. Jenkins*, 665 F.2d 47 (2d Cir. 1981); *United States v. Evans*, 665 F.2d 54, 55 (2d Cir.1981); *United States v. Amos*, 566 F.2d 899, 901 (4th Cir.1977). Allowing separate convictions for bank robbery and kidnapping during an escape after conviction for bank robbery punishes conduct arising out of clearly separate transactions. To bar conviction in this case under subsection (e) would render that provision of the statute meaningless, since the government would be discouraged from seeking an additional conviction based on the separate criminal conduct. Further, unlike cases under the first two clauses of subsection (e), the government does not have the full facts on all crimes within the scope of the statute when escape subsequent to conviction on the robbery count is implicated. From the plain fact that Congress provided for a crime premised on escape from confinement, we can infer that Congress must have considered that such escape would be separate in time and space from the robbery, and, therefore, ought to be punishable separately. The robbery and the escape in this case arose in clearly separate factual situations which Congress, may, and has, expressed its intention to punish separately.

Accordingly, the judgment of the district court is AFFIRMED.

---

**3.** In *Simunov v. United States,* 162 F.2d 314 (6th Cir.1947), the defendant was indicted under the precursors of subsection (a), (d), and the second clause of (e). We held that "[i]t is now settled that the statute dealing with the offense of bank robbery creates but a single offense with various degrees of aggravation permitting sentences of increasing severity." *Id.* at 315. We held that the offense under subsections (a) and (d) merged into the subsection (e) offense. In *United States v. Hunter,* 538 F.2d 1239 (6th Cir. 1976), where defendant was convicted under subsections (b), (d) and the first clause of (e), we vacated the sentences under subsection (b) and (d), and remanded for resentencing under subsection (e). We "rejected pyramiding penalties under the Federal Bank Robbery Act where the offenses arose from *the same transaction.*" *Id.* at 1240 (emphasis added). In *United States v. Moore,* 688 F.2d 433 (6th Cir.1982), defendant was sentenced under subsections (d) and (e) for a kidnapping that continued after the bank robbery was completed. We applied *Hunter* and *Simunov,* and remanded for sentencing under subsection (e), holding that "[i]n this instance, the kidnapping was obviously a part of the robbery scheme from the beginning and continued through the completion of the bank robbery and through appellant's temporary escape thereafter." *Id.* at 435.