996 F.2d 1218
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Wallace Vaughn MCDANIEL, Defendant-Appellant,
 No. 92-6075.
 United States Court of Appeals, Sixth Circuit.
 June 17, 1993.
 
 Before GUY and SUHRHEINRICH, Circuit Judges, and JOINER, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Following his conviction for armed bank robbery, defendant, Wallace McDaniel, escaped from custody. After being at large for 18 months, he was recaptured. McDaniel was subsequently charged with escape from federal custody, 18 U.S.C. § 751(a); using a firearm in relation to a crime of violence, 18 U.S.C. § 924(c)(1); and forcing two persons to accompany him while freeing himself from confinement resulting from the armed bank robbery conviction, 18 U.S.C. § 2113(e).
 
 
 2
 McDaniel pleaded guilty to the escape charge but went to trial on the other two counts. A jury found him guilty and he now appeals. On appeal, defendant argues that there was insufficient evidence to support his convictions and that the trial judge should have granted his motions for acquittal.
 
 
 3
 Upon a review of the record, we conclude that defendant's contentions lack merit and we affirm.
 
 I.
 
 4
 While in temporary custody in a county jail after his bank robbery conviction, defendant escaped with the aid of a firearm. When Deputy Jailer Leonard Miller came in the cell block area to lock the prisoners' doors for the night, he was confronted by McDaniel. The defendant locked Miller in a cell and then locked a second "slam door" behind him as he proceeded down the hallway to the office, where he confronted Deputy Jailer Margaret Kirby and inmate-trustee Earl Martin. McDaniel then took Kirby and Martin back down the 75-foot hallway and locked them behind the slam door and completed his escape from the jail.
 
 
 5
 After McDaniel was recaptured, an agent of the Bureau of Alcohol, Tobacco and Firearms (ATF) found a .25 caliber semi-automatic pistol in McDaniel's residence which became government's Exhibit 1 at trial. The pistol was operable.
 
 
 6
 At McDaniel's trial, two other witnesses gave testimony relevant to the firearm charge. An inmate, who was in the county jail when McDaniel escaped, testified that McDaniel had asked him about getting a gun to "make his escape easier." The inmate thought he later saw McDaniel with a .22 caliber automatic pistol.
 
 
 7
 A deputy United States marshal also testified that when returning McDaniel from Mississippi, where he was found, to Kentucky, he asked the defendant, "Well, I don't suppose you would tell me how you got that gun into the Rockcastle County Jail?" McDaniel's response was, "Well I'll make a deal with you. If you tell me who ratted me out in Mississippi, then I'll tell you how I got the gun in the jail." Since the marshal refused to tell McDaniel what he wanted to know, the marshal learned nothing further.
 
 II.
 
 8
 A. The Sufficiency of the Evidence on the Firearm Count
 
 
 9
 At trial, the defendant testified he had carved the gun out of a bar of soap. He argues on appeal that, since it was not a real gun, he could not be guilty of a violation of 18 U.S.C. § 924(c)(1). Counterbalanced against McDaniel's assertions was the testimony of those present the night of the escape who all thought the gun was real and described it as a .22 or .25 caliber automatic. These witnesses were all persons familiar with firearms. They were also fearful.
 
 
 10
 There was also the testimony of the other jail inmate relative to McDaniel's inquiries about obtaining a firearm, as well as McDaniel's statement to the marshal relating to getting the gun into the jail. The government also introduced a "looks like" firearm into evidence which was in McDaniel's possession at the time of his recapture. In short, this was ample evidence from which a reasonable juror could conclude that McDaniel used a real firearm to facilitate his escape. There is no requirement that the actual weapon used be produced. United States v. Castillo, 924 F.2d 1227 (2d Cir.1991).
 
 
 11
 B. The Sufficiency of the Evidence on the "Accompaniment" Count
 
 
 12
 Title 18, United States Code, Section 2113(e) provides:
 
 
 13
 Whoever, in committing any offense defined in this section, or in avoiding or attempting to avoid apprehension for the commission of such offense, or in freeing himself or attempting to free himself from arrest or confinement for such offense, kills any person, or forces any person to accompany him without the consent of such person, shall be imprisoned not less than ten years, or punished by death if the verdict of the jury shall so direct.
 
 
 14
 (Emphasis added.)
 
 
 15
 We had occasion to discuss this section in United States v. Miller, 793 F.2d 786 (6th Cir.), cert. denied, 479 U.S. 934 (1986). Miller, as does this case, involved an escape from jail, although in Miller the escape was unsuccessful. Many of the Miller facts parallel those here, since the prison guards involved were never taken out of the jail. Miller and codefendant Melton jumped a prison guard and told him not to do anything stupid or harm would come to him. They then took the guard down various hallways, opening doors along the way. When they arrived at the control room, they told the guard to tell the persons inside to "unlock the door or we're going to kill you." Id. at 788. When the control room personnel refused to open the door, Miller and Melton ran back to their cells when they heard an elevator bringing help.
 
 
 16
 In analyzing whether the facts in Miller constituted a violation of § 2113(e), we stated:
 
 
 17
 Several factors support denial of the motion for acquittal. First, it is clear that Miller was an integral part of the scheme to escape. Second, Miller's intention to use force in some respect is evidenced by his possession of the weighted sock. Third, the evidence establishes unequivocally that Miller threatened Baughman, warning him that he would get hurt if he did anything stupid. This evidence is sufficient to allow a jury to infer that Baughman accompanied Melton and Miller without consent and by the use of force. Accordingly the district court did not err in denying the motion for acquittal.
 
 
 18
 Id. at 789. Here the defendant had a firearm which he used to force Kirby and Martin to accompany him for the purpose of locking them up so that he could complete his escape. The jury could properly conclude that the locking up of Kirby and Martin was central to defendant's escape, and that they only went down the hallway under threat of force against them.
 
 
 19
 AFFIRMED.
 
 
 
 *
 The Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation